**Charlie WADE et al., Plaintiffs,**

**v.**

**MISSISSIPPI COOPERATIVE EXTENSION SERVICE et al., Defendants.**

**No. EC 70-29-K.**

United States District Court,
N. D. Mississippi, E. D.

June 17, 1974.

See also, D.C., 64 F.R.D. 102.

Frank R. Parker, Jackson, Miss., Stephen P. Passek and Mary Planty, Dept. of Justice, Washington, D. C., for plaintiffs.

William A. Allain, 1st Asst. Atty. Gen., Jackson, Miss., for defendants.

## MEMORANDUM ORDER

KEADY, Chief Judge.

■ The court presently has before it the motion of private plaintiffs for allowance of a reasonable attorney's fee incurred in this public job and services discrimination case. This issue was reserved in our prior judgment of February 15, 1974, upon submission of briefs by counsel. See Memorandum Opinion, Wade v. Miss. Coop. Ext. Ser., 372 F.Supp. 126 (N.D.Miss.1974).

■ After due consideration, we conclude that our decision is controlled by the Fifth Circuit's recent en banc holding in Morrow v. Crisler, 491 F.2d 1053 (1974). In that case, the entire court gave its express approval to granting attorney fees to plaintiffs in a § 1981 action who successfully challenged racially discriminatory hiring practices of the Mississippi Highway Patrol, a state agency. The court, without elaboration, equated the Highway Patrol case with Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, a Title VII action brought under a statute specifically authorizing the court, in its discretion, to allow the prevailing party an attorney's fee as part of the cost of the litigation. 42 U.S.C. § 2000e–5(k).[1] This was to be anticipated from Cooper v. Allen, 467 F.2d 836 (5 Cir. 1972) which imposed counsel fees upon the City of Atlanta on a § 1983 action successfully maintained by a black applicant for the position of

municipal golf pro. Accordingly, we are unable to perceive any distinction between private employers and public employers as regards liability for attorney fees to plaintiffs who are successful in the maintenance of job discrimination cases, at least where the discrimination is on account of race.

■ As plaintiffs point out, the standard applicable to racial discrimination litigation, especially in employment, is not the "unreasonable and obdurately obstinate standard", which was discussed in Jinks v. Mays, 464 F.2d 1223 (5 Cir. 1972), and applied by this court in Gates v. Collier, 349 F.Supp. 881, aff'd. 489 F2d 298 (5 Cir. 1973), petition for rehearing en banc pending. Rather, the basis of an allowance is the concept of a "private attorney general" who, by bringing suits against racial discrimination, vindicate a policy that Congress considered of the highest priority. This principle, first enunciated by the Supreme Court in Newman v. Piggie Park Enterprise, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), has been often applied by the Fifth Circuit to allow attorney fees to private plaintiffs prevailing in suits brought under the Civil Rights Acts, 42 U.S.C. §§ 1981, 1982 and 1983, as well as under various other federal statutes. See cases collected Fn. 1, Gates v. Collier, 489 F.2d 298 at 300.

Hence, we find it unnecessary to address the issue of whether the evidence shows the defendants manifested a course of conduct or committed actions in the course of this extended litigation which might be deemed unreasonable and obdurately obstinate. As we conceive the current state of the law, where an attorney's fee is allowable to private litigants for vindicating important Congressional policies, courts are obliged to make an allowance unless the circumstances present in the particular case

[1]. Congress, too, has made state employers subject to the strictures of Title VII as to all public job discrimination cases arising after March 24, 1972. 42 U.S.C. § 2000e(b), Supp.1973. This statute, of course, does not control the present case, which was instituted on March 29, 1970.

make it unjust or inequitable to do so. In this regard, defendants urge upon the court several reasons why they feel it would be improper to allow counsel fees in the case at bar. Each of these contentions will be separately discussed.

First, it is urged that since the court, at one stage of the case prior to trial, entered an order under Rule 37, F.R.Civ.P., compelling plaintiffs to answer certain interrogatories by defendants and reserved imposition of sanctions against the plaintiffs, plaintiffs should now be barred from being awarded an attorney's fee. Such a Rule 37 order was entered against plaintiffs, as well as plaintiff-intervenors. We disagree that this necessitates an outright denial of attorney fees for plaintiffs, although it is equitable to deduct from the allowance such sum as represents a reasonable attorney's fee incurred on behalf of defendants to obtain a Rule 37 order.

Second, it is urged that it is improper to allow counsel fees since the burden of the litigation was assumed by salaried attorneys, investigators and researchers in the Department of Justice who represented the United States and federal officials as plaintiff-intervenors. The record, however, reflects that in this protracted litigation which required several evidentiary hearings and voluminous proof, counsel for the private plaintiffs, instead of playing a passive role, actively participated throughout in the prosecution of the case, assumed a great measure of responsibility for presenting evidence and independently prepared and submitted various legal memoranda of value to the court. Plaintiffs do not seek to be compensated for services of attorneys representing the federal interests but only for that performed by counsel for the private plaintiffs. In other cases where the United States has seen fit to intervene in litigation instituted by private plaintiffs, courts have nonetheless allowed attorney fees for counsel representing private interests. Gates v. Collier, supra; King v. Georgia Power Co., 474 F.2d 906 (5 Cir. 1973).

Defendants next urge that since the plaintiffs did not obtain *all* relief sought, they may not be deemed to have prevailed in the litigation. Although the plaintiff Moody as an employee was refused specific relief, the court did uphold the claims of the class based on racial discrimination in employment and it granted equitable relief to the plaintiff class as well as specific injunctive relief to the plaintiffs Lindsey and Wade. A principal thrust of the whole lawsuit went to claims of racial discrimination in MCES employment; in this essential respect plaintiffs were substantially successful. That other facets of their contentions, such as certain aspects relating to the 4–H program, the home economist service and the delivery of extension services to farmers and the general public, were not upheld does not preclude plaintiffs from being viewed as the prevailing party, especially in the light of the findings that defendants were guilty of racially discriminatory practices forbidden by federal law. These aspects of the case were surely dominant in the controversy and plaintiffs basically prevailed in that area. This is especially true when the case resulted in ordering for plaintiffs broad equitable relief designed to eliminate discriminatory practices in the hiring and promoting of MCES professional employees. Parham v. Southwestern Bell Telephone Co., 433 F.2d 421 (8 Cir. 1970). The court's failure to sustain plaintiffs on all points is of no consequence in our consideration that plaintiffs were the prevailing party, within the criteria for judging the propriety of assessing counsel fees.

Defendants assign as a fourth reason the assertion that the litigation was induced because of plaintiffs' unwillingness to settle the issues through discussions and compromise. It is true that correspondence seeking a resolution of the controversy passed between defense counsel and attorneys representing the Department of Justice, and defendants and their counsel sought certain conferences with federal officials without suc-

cess. The court delayed the case somewhat in the vain hope that an agreement might be reached. It is unnecessary to attempt to evaluate responsibility₀ for the breakdown in settlement talks which were conducted principally, if not wholly, between attorneys representing the United States and defense counsel. Counsel for private plaintiffs were largely bypassed in these overtures. The important fact, however, is that settlement was never reached, nor did defendants ever propose the substantial equivalent of what relief was granted to the private plaintiffs. Since the plaintiffs found it necessary to continue the litigation which they began and contest with defendants for the establishment of their claims, necessarily, abortive settlement discussions may play no role in the court's determination of the fee question.

A fifth argument combines the points that since the United States Department of Agriculture for years participated in the discriminatory employment practices found to exist and that MCES operates on a limited budget, its available funds should not be reduced to pay counsel fees. Neither point has merit. These or similar arguments have frequently been held immaterial by federal courts in orders imposing against public employers liability for attorney fees in successfully maintained suits establishing racially discriminatory employment practices.

■ Although defendants do not urge the point, we note that counsel for the plaintiffs were in the employ of the Jackson, Mississippi, office of Lawyers Committee for Civil Rights Under Law. Attorney fees are not to be denied or reduced simply because counsel for successful civil rights litigants were employed and paid by the Lawyers Committee for Civil Rights Under Law, which is a non-governmental, privately funded legal services organization. The Fifth Circuit in recent cases has explicitly declared this to be the rule. Fears v. Burris Mfg. Co., 436 F.2d 1357 (5 Cir.

1971). Fairley v. Patterson, 493 F.2d 598 (5 Cir. 1974).

When all aspects of the case sub judice are considered, we find no factors which would make it inequitable or unjust to assess reasonable attorney fees against defendants. On the contrary, to grant an allowance accords with the judicial policy now strongly prevailing in successfully maintained suits involving discriminatory employment practices. We find, therefore, that this item of expense is required to be borne by the defendants.

■■ Standards governing the reasonableness of an award for attorney fees in such cases were enunciated in *Johnson v. Georgia Highway Express, Inc.*, supra, and made directly applicable here by the en banc holding in *Morrow v. Crisler*, supra. Plaintiffs' counsel have submitted documentation showing 341.25 hours of professional work, for which they seek an allowance of $13,650 based on a time rate of $40 per hour. The use of an hourly rate is, of course, an accepted method of computing counsel fees in major federal litigation. Without doubt, the efforts of counsel were performed with great professional skill and in contest with highly experienced and resourceful attorneys representing defendants. Judged by all standards, the legal services rendered to plaintiffs were valuable and should be properly compensated. Consistent with the hourly rate which we allowed in *Gates v. Collier*, we grant to plaintiffs counsel fees for their time expended at the rate of $35 per hour, and round the figure at $12,000. From that amount the court deducts $500, which is herewith declared to be the reasonable sanction imposed upon plaintiffs for necessitating defendants to obtain a Rule 37 order to compel answers to interrogatories; this eventuality was earlier mentioned. This action results in a net award to private plaintiffs of $11,500 for counsel fees.

It is accordingly ordered that private plaintiffs do have of and recover from

defendants the sum of $11,500 as reasonable attorney's fee incurred in this cause, the same to be taxed in and included with other allowable costs, for which execution may issue.