**Dorothy C. PARKER, Plaintiff,**

v.

**F. David MATTHEWS, Secretary, Department of Health, Education, and Welfare, Defendant.**

**Civ. A. No. 75–0812.**

United States District Court, District of Columbia.

April 1, 1976.

Linda R. Singer, Jeffrey L. Squires, Washington, D. C., for plaintiff.

Peter C. Schaumber, Asst. U. S. Atty., Washington, D. C., for defendant.

Judith K. Munger, Washington, D. C., for amicus curiae, Women's Legal Defense Fund.

John L. Burke, Jr., Washington, D. C., for amicus curiae, The Washington Lawyers' Committee for Civil Rights Under Law.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

This case is before the Court on plaintiff's motion for attorneys' fees, pursuant to 42 U.S.C. § 2000e–5(k). This Court finds that plaintiff is entitled to an award of reasonable attorneys' fees for the reasons set forth below.

## I. BACKGROUND

On February 15, 1973, plaintiff, Dorothy Parker, filed an administrative complaint with the Office of Education of the Department of Health, Education, and Welfare (HEW), alleging discrimination due to her race and sex and seeking an immediate promotion from her position as a GS–9. An investigation was conducted and, on September 7, 1973, the investigative report concluded that the plaintiff had been discriminated against and recommended that plaintiff be promoted to a GS–13. In the spring of 1974, HEW implemented part of the investigative report by promoting plaintiff to a GS–11 with assurances that she would soon be promoted to a GS–14 as the original investigative report had recommended. In the spring of 1975, HEW issued its final determination: that it would disregard the investigative report as well as the recommendation of the Office of Education's Equal Employment Opportunity Staff Officer. Thereafter, plaintiff filed the instant law suit.

In defendant's answer filed July 22, 1975, all allegations of the complaint were denied. Less than two months later, on September 18, 1975, HEW issued a formal decision to the effect that plaintiff had been discriminated against on the basis of race and sex, and that she should be retroactively promoted to GS–13, with appropriate back pay.

On November 14, 1975, this Court entered an order approving the settlement of the instant litigation, which reserved the question of attorneys' fees for judicial decision.

## II. THE COURT FINDS THAT PLAINTIFF, WHO HAS ENTERED INTO A SETTLEMENT OF HER TITLE VII CLAIM, IS A "PREVAILING PARTY" WITHIN THE MEANING OF THAT TERM AS USED IN 42 U.S.C. § 2000e–5(k), AND IS THEREFORE ENTITLED TO REASONABLE ATTORNEYS' FEES AND EXPENSES.

Plaintiff, who has entered into a settlement as to her Title VII claim, seeks attorneys' fees as a "prevailing party" in accordance with 42 U.S.C. § 2000e–5(k). Defendant, while having agreed to the settlement, asserts that plaintiff is not the prevailing party, since the case was disposed of by settlement rather than by a judgment after a full adjudication on the merits. In view of defendant's argument, the question presented is whether a plaintiff who enters into a settlement may still be a "prevailing party" within the meaning of that term as used in 42 U.S.C. § 2000e–5(k).

Section 2000e–5(k) limits the award of attorneys' fees to a "prevailing party":

"In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's

fee as part of the costs, and the Commission and the United States shall be liable for costs the same as a private party."

There is, however, no definition of "prevailing party" in the statute, nor is there an explanation of the term in the legislative history of the Act. See 2 U.S.Cong. & Adm.News p. 2355 (1965). The Court must, therefore, look to the plain meaning of the language of the statute.

The defendant maintains that the plain meaning of "prevailing party" clearly subsumes the concept of a favorable judicial determination, of the merits of the action. Under defendant's view attorneys' fees could not be awarded where a settlement resolves the litigation. This Court does not agree that the plain meaning of "prevailing party" is limited to plaintiffs who have obtained a favorable judgment after a full adjudication of the merits.

If the Court were to adopt defendant's suggested meaning plaintiffs would be forced to try every case for the purpose of insuring an award of attorneys' fees. This result makes defendant's assertion untenable, since any suggested interpretation of the language of the statute which would lead to an absurd or futile result, or which would not further or be consonant with the purpose of the act, must be rejected. *United States v. American Trucking Associations, Inc.,* 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345, 1351 (1940); *Organized Migrants in Community Action, Inc., v. Brennan,* 520 F.2d 1161 (D.C.Cir. 1975); *International Telephone & Telegraph Corp. v. General Telephone & Electronics Corp.,* 518 F.2d 913 (9th Cir. 1975).

Certainly it would not be reasonable to interpret the term "prevailing party" so as to discourage settlement of cases, thereby making the interpretation contravene the generally-favored policy of the law to encourage settlement of litigation. Moreover, requiring full litigation in all cases cannot be the criterion for furthering the purpose of the Civil Rights Act.

The policy considerations underlying an award of attorneys' fees in civil rights actions are clear. In civil rights litigation, individual litigants assume the position of "private attorneys general"[1] vindicating a congressional policy against discrimination. When the Civil Rights Act of 1964 was passed, it was understood "that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law." *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 401, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263, 1265 (1968). It is only through attorneys' fees provisions that litigants can be assured of the competent counsel they need for the effective enforcement of their right not to be discriminated against. *Newman v. Piggie Park Enterprises, supra,* 390 U.S. at 402, 88 S.Ct. at 966, 19 L.Ed.2d at 1265, lays out the important rationale for the provision on attorneys' fees:

"If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Congress therefore enacted the provision for counsel fees—not simply to penalize litigants who deliberately advance arguments they know to be untenable but, more broadly, to encourage individuals injured by racial discrimination to seek judicial relief under Title II."

In Title VII actions, the *Piggie Park* rationale has been frequently reiterated. *Smith v. Kleindienst,* 8 F.E.P. 753 (D. D.C. June 24, 1975) *aff'd sub nom. Smith v. Levi,* 527 F.2d 853 (D.C.Cir. 1975); *Wade v. Mississippi Co-op Extension*

---

1. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974); *Clark v. American Marine Corp.,* 320 F.Supp. 709 (E.D.La. 1970), *aff'd* 437 F.2d 959 (5th Cir. 1971); *Wade v. Mississippi Co-op Extension Service,* 378 F.Supp. 1251 (N.D.Miss.1974); *See generally, Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *J. I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); *Dawson, Lawyers and Involuntary Clients in Public Interest Litigation,* 88 Harv.L.Rev. 849, 891 (1975).

*Service,* 378 F.Supp. 1251 (N.D.Miss. 1974); *Clark v. American Marine Corp.,* 320 F.Supp. 709 (E.D.La.1970), *aff'd* 437 F.2d 959 (5th Cir. 1971). Considering this policy, it would be inconsistent to deny an award of attorneys' fees to those plaintiffs merely because they choose to settle rather than obtain a final judicial determination.

■ Nor does this Court believe that the term "prevailing party" necessarily connotes a final judicial determination. Blacks' Law Dictionary (rev. 4th ed. 1968, p. 1352), supplies the following definition:

"That one of the parties to a suit who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not to the extent of his original contention. [citations omitted].

"To be such [a prevailing party] does not depend upon the degree of success at different stages of the suit, but whether, at the end of the suit, *or other proceeding,* the party who has made a claim against the other, had successfully maintained it." [citations omitted] [emphasis supplied].

According to this definition which this Court adopts, the operative factor is success, not at which stage or how that success is achieved, i. e. trial or settlement. The same conclusion has been reached by other courts when considering other statutory schemes permitting attorneys' fees and costs to the "prevailing party."

While the definition of "prevailing party" has ofttimes been expressed as a party who obtains a favorable judgment,[2] this appears to have been a matter of circumstance rather than an intentional limitation. When directly presented with the question whether a statute providing for the recovery of fees to the "prevailing party" encompassed circumstances less than a final judgment, courts have found it logical and reasonable to extend the definition of "prevailing party" beyond the restrictive view taken by the defendant herein. In *Corcoran v. Columbia Broadcasting System,* 121 F.2d 575 (9th Cir. 1941), which dealt with the Copyright Act's provision providing for "[an] award to the prevailing party a reasonable attorney's fee as part of the costs," 17 U.S.C. § 116, the Court held that the "authority given is not in terms limited to the allowance of fees to a party who prevails only after a trial on the merits." *Id.* at 576.[3] *See also Hart v. Wolff,* 489 P.2d 114, 119 (Alaska 1971). In one notable case, wherein a party had obtained a final judgment and sought fees under a statute with language similar to the one herein, a court refused to find the party the "prevailing party" pointing out that the other party had at all times admitted liability and had communicated this fact to its adversary before the complaint was filed; the only issue tried was the one admitted; and, that the successful party merely recovered an amount tendered before trial. *McCrary v. New York Life Ins. Co.,* 84 F.2d 790, 795 (8th Cir. 1936). The court concluded that "resort to law was [not] reasonably necessary to secure [the party's] rights." *Id.*

■ This Court believes the *Corcoran-McCrary* analysis is both reasonable and applicable to the interpretation of the term "prevailing party" as used in 42 U.S.C. § 2000e–5(k).[4] It would, however,

---

**2.** See cases cited in *Words and Phrases, "Prevailing Party,"* at 116–117. For a discussion of the term "prevailing party" with respect to costs, see 6 J. Moore, Federal Practice § 54.-70[4] (1975).

**3.** Where the statute limits the "prevailing party" to "the party in whose favor final judgment is rendered," *Arnold v. Browne,* 27 Cal. App.3d 386, 103 Cal.Rptr. 775 (1st Dist., Div.

2, 1972), a court would not be inclined to reach the same definition as in *Corcoran, supra.*

**4.** There are numerous other federal statutes which provide for an award of attorneys' fees to a "prevailing party." E. g., Copyright Act, 17 U.S.C. § 116; Patent Infringements, 35 U.S.C. § 285; Fair Housing Act of 1968, § 812,

be equally objectionable to interpret the statute as permitting attorneys' fees to be awarded in all cases which end in settlement. Certainly, attorneys' fees should not be awarded in nuisance settlements. Therefore, to avoid an abuse of the attorneys' fees provision, there must be some additional measure employed by the courts to determine whether the plaintiff is in fact the "successful party" and whether the plaintiff's action has advanced the public interest. Several courts have applied the "catalyst" concept. In *Parham v. Southwestern Bell Telephone Co.*, 433 F.2d 421 (8th Cir. 1970), plaintiff's suit was described as the catalyst which forced defendant to "voluntarily" comply with Title VII requirements. Although the plaintiff in *Parham* did not prevail in his individual claim, the suit did force the employer into remedial action as to the class. Attorneys' fees were awarded, the court noting that plaintiff, "[h]aving prevailed in his contentions of [social] discrimination against blacks generally," was entitled to the award, 433 F.2d at 430. *Accord, Reed v. Arlington Hotel Co., Inc.*, 476 F.2d 721 (8th Cir. 1973).[5] While the "catalyst" concept is extremely useful, it appears that, generally speaking, the awarding of attorneys' fees must turn on the facts of the particular case. This Court concludes that to be a "prevailing party" within the meaning of that term as used in 42 U.S.C. § 2000e–5(k) does not require as an essential criteria the securing of a favorable judgment after trial on the merits; that a party who settles his or her Title VII lawsuit *may* be a "prevailing party" under the statute; and that whether to award attorneys' fees where there has been a settlement of a Title VII lawsuit must be determined by a close scrutiny of the totality of the circumstances surrounding the settlement, focusing particularly on the necessity for bringing the action and whether the party is the successful party with respect to the central issue—discrimination.

■ Applying the above test to the instant lawsuit, it is of significance that plaintiff's persistent efforts on the administrative level were repeatedly thwarted by the agency's non-action. After an initial finding of discrimination from the investigative report, it was six months before HEW issued an interim determination which only partially implemented the investigative finding. A year later, in the spring of 1975, HEW issued its final determination which completely disregarded the investigative report. The final determination stated that there had been no discrimination and plaintiff would remain in her position as a GS–11. Plaintiff was then forced into a position where a lawsuit in district court was the only means by which she could obtain the relief which

---

42 U.S.C. § 3612(c). One federal statute even provides for attorneys' fees to the "successful party," Servicemen's Readjustment Act, 38 U.S.C. § 1822(b). Some statutes provide no limitations such as prevailing or success but, rather, would appear to give the court a much wider discretion. E. g., Trust Indenture Act, § 323(a), 15 U.S.C. § 77www(a) (". . . A person seeking to enforce such liability may sue at law or in equity in any court of competent jurisdiction. In any such suit the court may, in its discretion, require an undertaking for the payment of costs of such suit and assess reasonable costs, including reasonable attorneys' fees, against either party litigant, having due regard to the merits and good faith of the suit or defense.")

Other statutes provide for attorneys' fees for the party who "finally prevails." E. g., Perish-

able Agricultural Commodities Act, § 7(b), 7 U.S.C. § 499g(b); Railway Labor Act, § 3, 45 U.S.C. § 153(p). The use of the words "finally prevails" does not appear to distinguish these statutes from those that use the words "prevailing party." Still other statutes have express limitations on when and to whom attorneys' fees may be awarded. E. g., Clayton Act, § 4, 15 U.S.C. § 15 (attorneys' fees recoverable only when treble damages recovered); Securities Act of 1933, § 11e, 15 U.S.C. § 77k(e) (attorneys' fees recoverable only to party who obtains a "judgment against the other party").

5. Accord, *Bowie v. Weinberger*, C.A. No. 74–1801 (D.D.C. June 18, 1975), where Judge Pratt awarded attorneys' fees when plaintiff's Title VII case was settled in advance of trial. No opinion was issued.

she had begun seeking over two years previously. Significantly, the defendant answered the complaint by denying all the allegations of discrimination. Yet, on September 18, 1975, the defendant totally reversed itself and issued a new "final" determination which found that Ms. Parker had, in fact, been discriminated against by defendant. Due to this change in position, the parties agreed to settle the lawsuit as to plaintiff's Title VII claim since the agency's reversal had provided plaintiff with all the relief she had requested two years and seven months previously when she had filed her administrative complaint. On the basis of the facts surrounding the settlement of this action, this Court finds that the plaintiff is the "prevailing party" and that the award of attorneys' fees is appropriate pursuant to 42 U.S.C. § 2000e–5(k).

III. PLAINTIFF'S COUNSEL ARE ENTITLED TO FAIR AND REASONABLE ATTORNEYS' FEES, DETERMINED BY THE COURT FOR TIME SPENT AT BOTH THE ADMINISTRATIVE AND JUDICIAL LEVELS.

█ In awarding an amount of attorneys' fees, the district court must carefully delineate the relevant factors which entered into the court's consideration of the award. "Further, this court . . . agrees that in determining the fee the court must seek to afford reasonable compensation to the attorney, mindful that there has been great criticism of attorneys for excessive fees in contingent fee situations." *National Association of Regional Medical Programs, Inc. v. Weinberger*, 396 F.Supp. 842, 848 (D.D.C.1975), citing *Kiser v. Miller*, 364 F.Supp. 1311, 1315 (D.D.C.1973), *modified on other grounds, sub nom. Kiser v. Huge*, 517 F.2d 1275 (D.C.Cir. 1975) (en banc). The applicable standards for determining the actual amount of the award are set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), as adopted by this Circuit in *Evans v. Sheraton Park Hotel*, 164 U.S.

App.D.C. 86, 503 F.2d 177 (1974). In making this award, this Court's intent is to assure fair and reasonable compensation to plaintiff's attorneys as well as to encourage similar service from public interest advocates in the future.

█ In support of plaintiff's motion for attorneys' fees, her counsel, Linda R. Singer, has submitted various papers to this Court:

1. Her affidavit as the attorney employed by plaintiff in this action, as well as affidavits of the two associates who worked on the case, Peter A. Jaszi and Jeffrey L. Squires.

2. An itemized expense schedule.

3. Descriptions of the legal services rendered on behalf of plaintiff by all three attorneys. This description is in chronological order covering the three years in which plaintiff's attorneys have been involved in the case.

4. A memorandum of points and authorities in support of her motion, as well as a reply to defendant's opposition.

The affidavits of plaintiff's attorneys indicate that a total of 195 hours have been spent on behalf of plaintiff. Calculated at the customary rates charged by the plaintiff's attorneys, the requested amount would come to $10,340.00, plus $42.86 in expenses. Of this 195 hours, approximately 153 have been spent on the merits of the case before this Court and on the administrative level before the HEW. The remaining 42 hours were spent on the present motion for attorneys' fees. In *Smith v. Kleindienst*, 8 F.E.P. 753 (D.D.C.1973). *aff'd sub nom. Smith v. Levi*, 527 F.2d 853 (D.C.Cir. 1975); an award of attorneys' fees included both the amount of time spent by plaintiff's attorneys on the administrative and the district court levels. In awarding attorneys' fees in *Smith, supra*, the Court did not make a distinction between the time spent during agency proceedings and the time spent in court. The issue on appeal was simply whether the fee was excessive, the court holding

that it was not. Accordingly, this Court will not make a distinction between the time spent by plaintiff's attorney on the administrative and judicial levels. Plaintiff was forced to bring this action to the federal courts because of the agency's refusal to implement the finding of discrimination. Moreover, counsel's representation before both the agency and this Court has been in furtherance of the policies behind the Civil Rights Act.[6]

Ms. Singer has been a member of the Bar of this court since 1968, and a partner in the law firm of Goldfarb & Singer since 1971. In the course of her practice, she has handled a significant number of cases in the area of employment discrimination. Ms. Singer has indicated that her normal hourly rate has changed over the course of her representation of Ms. Parker as follows:

| From 2/1973 to 7/30/73 | $50.00 per hour |
| From 8/1/73 to 9/30/73 | 60.00 per hour |
| From 10/1/74 to 8/31/75 | 65.00 per hour |
| From 9/1/75 to present | 75.00 per hour |

In the instant law suit, Ms. Singer has logged a total of eighty and one-half hours. Sixty-four and three-quarters of these hours were spent on the merits of plaintiff's case, the remaining fifteen and three-quarters having been spent on the present motion for attorneys' fees.

■■■ During the course of this proceeding, Ms. Singer has objected to any delays and has always stood ready and fully prepared to proceed. It cannot be disputed that Ms. Singer zealously represented her client during both the agency and district court proceedings. It is also true that there was no discovery and little time was spent on legal research except on the question of attorneys' fees, *Kiser v. Miller, supra* at 1316–17. Under all the circumstances, the Court concludes that a fair and reasonable hourly rate for Ms. Singer's work on the merits of the case should be $60.00 per hour. This amount takes into account the fact that different kinds of work were per-

formed by counsel. Not all of counsel's work required a high degree of skill; certain of counsel's activities do not demand as high a rate. *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3d Cir. 1973); See also, *Kiser v. Miller, supra*, 364 F.Supp. at 1318; *Nat'l Ass'n of Regional Medical Programs, Inc. v. Weinberger, supra*, 396 F.Supp. at 849. Therefore, the Court finds that $60.00 per hour represents fair and reasonable compensation for Ms. Singer.

Ms. Singer's two associates, Peter A. Jaszi and Jeffrey L. Squires, have also submitted affidavits in support of plaintiff's motion for attorneys' fees. Mr. Squires spent a total of ninety-two and one-half hours on behalf of plaintiff; sixty-six of these were spent on the merits of the case, the remaining twenty-six and one-half hours were spent on the present motion for attorneys' fees. Mr. Jaszi spent a total of twenty-two hours on the merits of Ms. Parker's case. At the times relevant hereto, the rate for Mr. Jaszi's services was $40.00 per hour. The hourly rate for Mr. Squires' services was as follows:

| From 10/73 to 9/30/74 | $40.00 per hour |
| From 10/1/74 to 4/1/75 | 50.00 per hour |
| From 4/1/75 to present | 55.00 per hour |

The Court finds these requested fees to be excessive. In the affidavits submitted by associates Jaszi and Squires, there is no mention of past experience in Title VII work, nor is there a discussion of any other experience of the associates. The Court, however, does take note of the high caliber of the papers before it. Accordingly, the Court awards $30.00 per hour for Mr. Jaszi's services and $35.00 per hour for Mr. Squires' services. The Court considers these amounts to be a fair and reasonable hourly rate for the work of the two associates.

■■■ With regard to the time spent on the motion for attorneys' fees, this Court

---

**6.** See Section II, *supra*.

believes that the same hourly rates should be applicable. In several other cases, the courts have reduced the hourly fee for the time spent petitioning the court for fees. *Nat'l Ass'n of Regional Medical Programs, Inc., supra,* 396 F.Supp. at 849–50; *Kiser v. Miller, supra,* 364 F.Supp. at 1318; *National Council of Community Mental Health Centers, Inc. v. Weinberger,* 387 F.Supp. 991, 996–97 (D.D.C.1974). However, in the instant case, the Court recognizes the significance of the petition before it,[7] and therefore finds that the time spent on the present motion is to be accorded the same weight as the time spent on the merits of plaintiff's case.

■ The Court does have problems, however, with certain items in plaintiff's logs. Initially, there is a frequent overlapping[8] of time that is apparent from the logs and the Court does not believe that defendant should have to pay the double hourly rates for conferences between the senior and junior attorneys. The Court also finds that an inordinate amount of time has been logged for telephone calls and conferences.[9] The Court finds that the time spent on legal research and more complex tasks should not be accorded the same weight as the time spent on the telephone and in conference. Accordingly, this Court discounts twenty per cent of the fee award for the unexplained and apparently excessive time spent in conference and on the telephone as well as for the overlapping of conference time between senior and junior attorneys.

■ The Court now turns to the consideration of the amount of the fee itself and what, if any, incentive fee should be awarded in this case. In support of this award, the Court is guided by previous decisions in attorneys' fee cases that set forth the factors to be considered: *Evans v. Sheraton Park Hotel,* 164 U.S. App.D.C. 86, 503 F.2d 177 (1974); See also, *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). These factors include: (1) the novelty and complexity of the issues, (2) the amount of risk involved in taking the

---

7. See Section II, *supra.*

8. Both Ms. Singer and her associates have logged hours for various conferences held between them. The following from the logs of plaintiff's attorneys show the dates on which both senior and associate have logged time for the same conference: 11/5/73, 11/6/73, 12/3/73, 12/20/73, 5/20/74, 9/23/74, 4/11/75 and 4/23/75.

9. One hundred thirty-seven entries are shown in Ms. Singer's logs for the entire period of time in which she represented Ms. Parker. Eighty-seven of these entries represent conferences and telephone calls, although a few of the entries are for conversations as well as some other business. Furthermore, there are periods of time in which the only items logged for several days were these phone conversations and conferences. Examples of the incidence of excessive conferencing and telephoning in Ms. Singer's logs are as follows: (1) between 4/10/73 and 4/22/73, 14 calls and conferences were conducted totalling 5.5 hours; (2) between 10/1/73 and 10/5/73, four calls and conferences were conducted totalling 1.5 hours; (3) between 2/1/74 and 2/4/74, four calls and conferences were conducted totalling 4.5 hours; (4) between 9/4/74 and 9/5/74, four calls and conferences were conducted totalling one hour; and (5) between 9/22/75 and 9/23/75, five calls and conferences were conducted totalling three hours. These examples listed above are representative of the entries that appear throughout plaintiff's attorneys' logs.

Mr. Squires' logs show a similar pattern. Out of a total of 68 entries, 32 of these involved time spent in conference and on the telephone. Examples of the incidence of this in Mr. Squires' logs are: (1) between 11/2/73 and 11/6/73, three entries are made representing three conferences totalling one hour; (2) between 12/3/73 and 12/6/73, three entries are made representing three conferences totalling approximately one and three-quarters hours; (3) in 1974 alone, Mr. Squires had a total of 16 entries, eight of which are for conferences and telephone conversations; (4) between 4/1/74 and 4/5/74, four entries were made for a total of two hours of conferences and telephone calls; (5) a similar situation is shown for 1975.

Mr. Jaszi's work on this case was brief in comparison to Ms. Singer's and Mr. Squires'. However, out of a total of fifteen entries in his logs, six were for time spent in conference.

case, (3) the nature and amount of the results obtained, and (4) the skill required to perform the legal services properly.[10]

While there were few novel legal questions presented in this case, counsel were faced with the legal question concerning the effect of the Whitten Amendment on the ability of the federal government to redress discriminatory personnel actions. The employment history of Ms. Parker made this case factually difficult, as counsel had to research plaintiff's more than twenty years' work with HEW. When the agency finally issued a determination which was contrary to the investigative report and recommendations of the Office of Education's Equal Employment Opportunity staff, Ms. Singer immediately instituted the present action. Counsel's time logs indicated that continued attention was given to this case over the course of almost three years. This case was unnecessarily prolonged due to the agency's obduracy. Throughout the entire administrative and judicial process, Ms. Singer faithfully and zealously represented her client, demonstrating a high degree of skill and conducting herself in the highest traditions of the bar. It was these efforts that ultimately brought Ms. Parker's case to a successful resolution.

The risk involved in this case was substantial. While plaintiff had received favorable reports from the investigating officials, the agency which must give those reports final approval refused to do so. Furthermore, counsel became involved in the instant case before any agency determination had been made, and having no idea of the possible outcome, or of the time that would be involved in resolving plaintiff's complaint. The results obtained were complete, but it took two years and seven months to achieve the desired result. It was only through counsels' persistence and dedication that plaintiff was finally able to prevail.

In addition, this Court is guided by previous decisions of this district on the question of the incentive fee or bonus. In *Nat'l Ass'n of Regional Medical Programs, Inc., supra,* 396 F.Supp. at 850–51, Judge Flannery awarded the attorney one hundred per cent incentive fee in an impoundment case that involved several novel and complex issues. On the other side is *Kiser v. Miller, supra,* 364 F.Supp. at 1318, where a ten per cent incentive fee was added to the award, the case involving neither complex nor novel issues. Judge Gesell granted a thirty per cent bonus in *Nat'l Council of Community Mental Health Centers, Inc. v. Weinberger,* 387 F.Supp. 991, 997 (D.D.C.1974), an impoundment case involving fewer complex issues than the case before Judge Flannery.

In light of the foregoing, the Court concludes that an appropriate fee would be $6,982.00 as well as an incentive fee of twenty-five per cent, making the total award $8,727.50 plus expenses. The fee was arrived at in the following manner.

| | |
|---|---|
| Attorney Singer's fee ($60 × 80.5 hours) | $4,830.00 |
| Attorney Jaszi's fee ($30 × 22 hours) | 660.00 |
| Attorney Squires' fee ($35 × 92.5 hours) | 3,237.50 |
| Award computed at hourly rate | $8,727.50 |
| Discount of twenty per cent | − 1,745.50 |
| Total | 6,892.00 |
| Incentive fee of twenty-five per cent | 1,745.50 |
| Total | 8,727.50 |
| Expenses | 42.86 |
| Net attorneys' fees to be awarded | $8,770.36 |

In making this award, the Court wishes to encourage attorneys to represent clients in the public interest. At the same time, "the court is mindful that any fee award must not only satisfy the need of the Bar for adequate remuneration, it also must not appear to be unreasonably great to the public. When an attorney represents a . . . [client]

---

**10.** These factors parallel those set forth in the Code of Professional Responsibility, DR 2–106.

in public interest litigation, he represents a great deal more than his own interest." *Nat'l Ass'n of Regional Medical Programs, Inc., supra,* 396 F.Supp. at 851. This is particularly true in Title VII cases where plaintiffs assume the role of private attorneys general vindicating a congressional policy which favors eradication of discriminatory practices.

*Method of Payment:*

In the motion for attorneys' fees, it has been pointed out that plaintiff has already paid her attorneys for some of the services rendered on her behalf. Therefore, pursuant to 42 U.S.C. 2000e–5(k), defendant will be ordered to pay the sum of $8,770.36 directly to plaintiff's counsel, who shall in turn reimburse the plaintiff, Ms. Parker, for the fees counsel has received in relation to this matter.

An order in accordance with the foregoing will be issued of even date herewith.