**AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL–CIO, et al., Plaintiffs,**

**v.**

**Bernard ROSEN, Executive Director, et al., Defendants (two cases).**

**Nos. 75 C 3336, 75 C 3337.**

United States District Court, N. D. Illinois, E. D.

Aug. 12, 1976.

Charles Barnhill, Jr., Davis, Miner & Barnhill, Chicago, Ill., for plaintiffs.

Asst. U. S. Atty. James Hynes, Chicago, Ill., for defendants.

## MEMORANDUM

LEIGHTON, District Judge.

### I.

These are consolidated suits by which plaintiffs sought to invoke the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E), and compel public dissemination by defendants of certain documents in their control. After answers were filed and plaintiffs had begun to prepare motions for summary judgment, defendants surrendered the documents in question. The Act, in subsection (a)(4)(E), provides that "[t]he court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E).

Based on this provision, plaintiffs have filed a petition for attorney fees and costs. Defendants object to the grant of an award on the ground that plaintiffs have not substantially prevailed because the requested documents were surrendered to them before judgment was entered in their favor. Therefore, the issue presented is whether plaintiffs who invoke the Freedom of Information Act substantially prevail within the meaning of the statute when documents they sue for are surrendered by defendants before a judgment granting relief is entered. The facts from which this issue arises are not in dispute.

### II.

The plaintiff American Federation of Government Employees, commonly referred to by the acronym AFGE, is a national labor organization of civilians employed by the United States. It represents more than 650,000 federal employees and maintains its national office in Washington, D. C. It has 15 district offices and 1500 local affiliates throughout the United States, the territories and the District of Columbia. Individual plaintiffs Allen H. Kaplan, Daniel McGuire and Walter Locke are, respectively, national vice-president, 7th District of AFGE; president of AFGE Local 1226; and president of AFGE Local 648. Defendants are Bernard Rosen, Executive Director of the United States Civil Service Commission, Donald J. Biglin, Assistant Executive Director for Freedom of Information; Robert

E. Hampton, Chairman, Jayne B. Spain, Vice-Chairman, L. J. Andolsek, Member, and the Commission.

By letters dated December 24, 1974, February 24 and April 17, 1975, each signed by one of them and addressed to the responsible defendant, McGuire, Locke and Kaplan requested copies of a report concerning personnel management at the Manpower Administration, United States Department of Labor, Chicago Region; one containing a personnel management evaluation of the Veteran's Administration Hospital, Knoxville, Iowa; and one containing a personnel management evaluation concerning Fort McCoy, Wisconsin. On March 4, 5 and April 24, 1975, as final agency actions, defendants denied plaintiffs' requests, relying solely on 5 U.S.C. § 552(b)(2), (5) and (6) as exempting the documents in question from public dissemination. Thereafter, the two suits in this case were filed on October 6, 1975 praying for an order on defendants to produce the requested documents, for an award of attorney fees and costs, and for such other relief the court may deem just and proper. Defendants appeared, answered the complaints, and denied their material allegations. Then, on March 1, 1976, through a letter signed by the United States Attorney representing defendants, plaintiffs' attorneys were furnished with the documents for which the suits had been filed. With the exceptions of unimportant deletions, they were exactly what plaintiffs had requested in their letters to defendants.

### III.

The first freedom of Information Act adopted by Congress in 1966 did not provide for the assessment of attorney fees and costs against the United States. In 1973, however, after extensive hearings, S. B. 1142 and H. R. 5425 were introduced in the Senate and in the House proposing a number of procedural and substantive changes in the Freedom of Information Act. These proposed changes referred to a legislative history which recognized that " * * * the people's right to learn what their government is doing through access to government information can be traced back to the early days of our Nation. Open government has been recognized as the best insurance that government is being conducted in the public interest, and the First Amendment reflects the commitment of the Founding Fathers that the public's right to information is basic to the maintenance of a popular form of government." Senate Committee on the Judiciary, Amending the Freedom of Information Act, S. Rep. No. 854, 93rd Cong., 2d Sess. 1–2 (1974). See House Comm. on Government Operations, H. R. Rep. No. 876, 93rd Cong., 2d Sess. (1974), U. S. Code Cong. & Admin. News 1974, p. 6267.

Both the House and Senate bills provided for the award of attorney fees and costs against the United States. These provisions were seen by many as a means of effectuating the congressional intent that federal agency refusals to adhere to the Act's mandates be subject to judicial review. The House bill authorized a federal court, in its discretion, to assess reasonable attorney fees and other litigation costs incurred by a successful complainant. The Senate bill contained similar provisions made applicable to cases in which the complainant had "substantially prevailed." In addition, the bill detailed the criteria which a court was to consider in awarding attorney fees and costs. These included determination of the benefit the public derives from the case, the commercial benefit to the complainant, his interest in the federal records sought, and whether the agency withholding of the records in question had a reasonable basis in law. See 1974 U. S. Code Cong. and Admin. News, pp. 6267, 6288. Congressional action taken on the two bills resulted in a conference report which recommended that the provisions of the Senate bill be followed, but that the criteria for court award of attorney fees be eliminated.

The conferees, however, did not intend by these eliminations to make the award of attorney fees in Freedom of Information cases automatic or preclude a court from considering the criteria which had been in-

cluded in the Senate bill. Instead, they concluded that existing case law on award of attorney fees in federal courts embodied the Senate criteria; therefore, a statement of them was unnecessary. See 1974 U. S. Code Cong. and Admin. News, pp. 6267, 6288. However, it was agreed that permitting a federal court to assess attorney fees and costs against the United States assured compliance with the congressional intent behind the proposed changes in the Freedom of Information Act. The Senate was told that "[t]he necessity to bear attorneys' fees and court costs can thus present barriers to the effective implementation of national policies expressed by the Congress in legislation [it had enacted]." Senate Committee on the Judiciary, Amending the Freedom of Information Act, S. Rep. No. 854, 93rd Cong., 2d Sess. 18 (1974). The conference report, however, did not define the term, nor did it indicate when a complainant has "substantially prevailed." Plainly, these words have been left by the Congress to judicial construction. Compare *Achilli v. United States* (1957), 353 U.S. 373, 77 S.Ct. 995, 1 L.Ed.2d 918; see *Woods v. Petchell* (8 Cir. 1949), 175 F.2d 202; *Young v. AAA Realty Co. of Greensboro, Inc.,* (D.N.C. 1972), 350 F.Supp. 1382; *Kaye v. Burns* (S.D.N.Y. 1976), 411 F.Supp. 897.

It has been observed that the words "the complainant has substantially prevailed" were intended by Congress to both protect agencies from capricious lawsuits and encourage citizens who have reasonable grounds to obtain desired but governmentally withheld information. See Note, The Freedom of Information Act Amendment of 1974; An Analysis, 26 Syracuse L.Rev. 951 (1975). A study of other federal statutes shows that on a number of occasions Congress has utilized the concept of discretionary award of attorney fees to a prevailing party as a method of effectuating its legislative enactments. See Vaughn, The Sanctions Provisions of the Freedom of Information Act Amendments, 25 Amer.Univ. L.Rev. 7, 19 (1975). For example, it did this in the Perishable Agricultural Commodities Act of 1930 as amended, 7 U.S.C. § 499g(b) (1962); The Truth in Lending Act, 15 U.S.C. § 1640(a)(2) (1970); The Emergency School Aid Act, 20 U.S.C. § 1617 (Supp. II, 1972); The Clean Air Act of 1970, 42 U.S.C. § 1857h–2(d) (1970); The 1964 Civil Rights Act, 42 U.S.C. §§ 2000a–3(b), 2000e–5(k) (1970); The Fair Housing Act of 1968, 42 U.S.C. § 3612(c) (1970); and in the Railway Labor Act, 45 U.S.C. § 153(p).

Turning to a part of the expression with which we are concerned, we find it has been judicially determined that the word "substantially" is to be equated with the word "about" and "essentially." See *Gilmore v. Red Top Cab Co. of Washington* (1933), 171 Wash. 346, 17 P.2d 886. It is a word employed to modify terms intended to be in close approximation. *Janzen v. Phillips* (1968), 73 Wash.2d 174, 437 P.2d 189. In construing the Perishable Agricultural Commodities Act, one federal court held that a party prevails in the litigation even though a judgment was not entered in his favor. *Nelson v. Kerzner* (E.D. Pa. 1953), 110 F.Supp. 949. In *Aspira of New York, Inc. v. Board of Education of the City of New York* (S.D.N.Y. 1975), 65 F.R.D. 541, the court held that on entry of consent decrees that substantially granted plaintiffs' desired relief, they were entitled to attorney fees under the Emergency School Aid Act. In a case construing the prevailing party concept under the Civil Rights Act of 1964, the court in *Parker v. Matthews* (D.D.C. 1976), 411 F.Supp. 1059, held that where a race discrimination claim is settled under the Act, the test whether the claimant is entitled to an award of attorney fees is the total circumstances surrounding the settlement, focusing on the need for bringing the court action and whether the claimant was successful with respect to the central issue of discrimination. In rejecting the same argument defendants make in this case, the court in *Parker* pointed out that if it "* * * were to adopt defendant's suggested meaning plaintiffs would be forced to try every case for the purpose of insuring an award of attorneys' fees. This result makes defendant's assertion untenable, since any suggested interpretation of the language of the statute which would lead to

an absurd or futile result, or which would not further or be consonant with the purpose of the act, must be rejected." 411 F.Supp. at 1062.

■ Recently, in *Consumer's Union of United States, Inc. v. Board of Governors of the Federal Reserve System* (D.D.C. 1975), 410 F.Supp. 63, a case that applied the subsection of the Freedom of Information Act here involved, it was held that the plaintiff, a non-profit consumer education organization, substantially prevailed by effecting a settlement agreement whereby defendants made public all requested rate information demanded prior to institution of the suit. The court did not discuss nor define the term "the complainant has substantially prevailed" as those words appear in the 1974 amendment to the Freedom of Information Act. Instead, it decided that plaintiff was entitled to an award of attorney fees and costs even though the case had been settled. Thus, from cases construing subsection (a)(4)(E), and those applying comparable language in other statutes, it is clear that prosecution of a suit to judgment has not been considered a requirement for the award of attorney fees and costs authorized by Congress. For this reason, the court concludes that plaintiffs have substantially prevailed within the meaning of the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E) where they are denied documents in the possession of a federal agency, file suit; and while the litigation is pending, defendants surrender the demanded documents. Under these circumstances, it is proper for the court to assess against the United States an award of the reasonably incurred attorney fees and litigation costs. *Kaye v. Burns* (S.D.N.Y. 1976), 411 F.Supp. 897. Therefore, plaintiffs' petition is sustained.

## IV.

As to the amount, plaintiffs support their petition with an affidavit of counsel stating that the lawyers representing them have had extensive experience in matters relating to federal employees and government related cases; that 21.4 hours have been spent in the case; that litigation costs incurred total $106.56; and that the customary billing rate of the lawyers is $60 per hour. Accordingly, based on the time spent and a requested incentive award of 20%, they petition for attorney fees in the sum of $1,548.

■ Defendants do not dispute the facts on which plaintiffs based their petition. The court, from its knowledge of the professional reputation enjoyed by plaintiffs' counsel, is of the view that the billing rate is reasonable, comparable to fees charged by lawyers of experience in this community. But it does not agree that this case justifies the addition of an incentive award. Incentive fees have been allowed in other circuits. See *National Association of Regional Medical Programs, Inc. v. Weinberger* (D.D.C. 1975), 396 F.Supp. 842; *National Council of Community Mental Health Centers, Inc. v. Weinberger* (D.D.C. 1974), 387 F.Supp. 991. In each instance, however, the award found support in a record which showed prolonged judicial proceedings. These cases did not involve extensive litigation. Compare *Parker v. Matthews* (D.D.C. 1976), 411 F.Supp. 1059.

■ Therefore, in view of the commonly held opinion that it would be reasonable to award attorney fees in a sum ranging from $1000 to $1400 per Freedom of Information case, see H. R. Rep. 876, 93rd Cong., 2d Sess. 9 (1974); Senate Committee on the Judiciary, Amending the Freedom of Information Act, S. Rep. No. 854, 93rd Cong., 2d Sess. 41 (1974), U. S. Code Cong. & Admin. News 1974, p. 6267, it is the judgment of the court that plaintiffs are entitled to an award of attorney fees in the sum of $775 for each of the two cases, plus $106.56 in litigation costs incurred; a total of $1,656.56 to be paid by the United States directly to plaintiffs' counsel. *Central R. & B. Co. of Georgia v. Pettus* (1875), 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915; compare *Parker v. Matthews* (D.D.C. 1976), 411 F.Supp. 1059; see Annot., 8 L.Ed.2d 894, 895, n. 2.