Oliver HOWARD, Noah Lee Brock, Hilton J. Taylor, Michael Strahan and William Washington, Individually and on behalf of all others similarly situated and Larry Dillon, Plaintiffs,

v.

C. Paul PHELPS, Secretary for the Department of Corrections for the State of Louisiana, Raymond Oliver, Fire Marshal for the State of Louisiana, John M. Bruce, Director of the Louisiana State Division of Health, William Stewart, Commissioner of the Louisiana Health and Human Resources Administration, Willie J. Blair, Sheriff for the Parish of Washington, et al., Defendants.

Civ. A. No. 76–3828.

United States District Court, E. D. Louisiana.

Jan. 12, 1978.

Donald M. Fendlason, Asst. Dist. Atty. for 22nd Jud. Dist., Bogalusa, La., for Fussell, Wascom, Simmons, Adams, Carrier, D. Crain, H. Crain, J. Crain, Dodds, Stuart, Fornea, Stewart, Kennedy and Thomas.

James, Knight & Brumfield, A. Clayton James, Jr., Franklinton, La., for Willie J. Blair.

CASSIBRY, District Judge:

We must decide here whether a party who has petitioned for and has been granted a preliminary injunction is entitled to interim attorney's fees as a "prevailing party" under the Civil Rights Attorney's Fees Awards Act of 1976, Pub.L. 94–559, § 2, Oct. 19, 1976, 90 Stat. 2641, codified at 42 U.S.C. § 1988. That Act provides in relevant part: "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." I have concluded that the party granted a preliminary injunction in this case is entitled to interim attorney's fees.

## BACKGROUND

This suit was filed on December 9, 1976 by persons detained in the Washington Parish Prison in Franklinton, Louisiana, alleging racial discrimination, denial of adequate living quarters, personal hygiene, food, and medical attention, lack of security, cruel and unusual punishment, curtailment of communications, barriers to access to counsel and courts, and inadequate recreational, educational, religious and rehabilitative facilities and programs. Defendants included the Secretary of the Department of Corrections for the State of Louisiana and various other State officials as well as the Sheriff, the Coroner, and individual members of the Police Jury for the Parish of Washington.

Plaintiffs entered a prayer for preliminary relief, the matter coming on for hearing on January 25, 1977. As a result there-

Robert M. Hearin, Jr., Russell & Derussy, R. James Kellogg, New Orleans, La., for plaintiffs.

William J. Guste, Jr., Atty. Gen., New Orleans, La., J. Marvin Montgomery, Asst. Atty. Gen., Baton Rouge, La., for C. Paul Phelps, William Stewart, John M. Bruce, and State of La.

of, an order was entered closing the Washington Parish Jail, granting leave to defendants to submit to the Court a plan to allow incarceration in the custody of the Sheriff in compliance with minimum constitutional standards. It was clear from the evidence at the hearing that inmates that had been sentenced under state law to the custody of the Department of Corrections were being held in the prison along with others, thus contributing to the overcrowding in the prison and laying some responsibility at the door of the State of Louisiana.

The matter is presently in a state of limbo pending decisions and developments in the Parish regarding the provision of proper prison facilities. Plaintiffs are now before the Court on a Motion to Award Interim Attorney's Fees.

## THE "PREVAILING PARTY" ISSUE

This is an issue that has received little attention in the relatively short period since passage of the Awards Act. Cases directly on point are in short supply. Some analogies to other similar statutes are helpful.

The Education Amendments of 1972 (20 U.S.C. § 1617) allow attorney's fees to prevailing parties but only upon entry of "a final order." In spite of the requirement for a final order, the Supreme Court has allowed fees to be awarded at a stage far short of ultimate determination of litigation. *Bradley v. School Board of City of Richmond*, 416 U.S. 696, 722 n.28, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). It is difficult to imagine that Congress intended that a greater degree of finality be required before fees could be awarded under the Awards Act, a statute with no mention whatsoever of a "final order."

Attorney's fees authorization statutes have been interpreted many times over to allow fees in cases that have never reached final judgment. Even a settlement may be sufficient victory to allow attorney's fees. The Freedom of Information Act allows fees to parties that "substantially prevail" (5 U.S.C. § 552(a)(4)(E)), language that is considerably more restrictive than that of the Awards Act before the Court in this case. Nevertheless, the Second Circuit, in an opinion by Judge Friendly, has held that a judgment is not an absolute prerequisite to such an award. *Vermont Low Income Advocacy Council, Inc. v. Usery*, 546 F.2d 509 (2d Cir. 1976).

Title VII of the Civil Rights Act of 1964 authorizes attorney's fees for the prevailing party. 42 U.S.C. § 2000e–5(k). This does not necessarily require the securing of a favorable judgment after trial on the merits. A party who settles his or her Title VII lawsuit may be a "prevailing party" under the Civil Rights Act. Whether or not to award fees in a settlement context "must be determined by a close scrutiny of the totality of the circumstances surrounding the settlement, focusing particularly on the necessity for bringing the action and whether the party is the successful party with respect to the central issue—discrimination." *Parker v. Matthews*, 411 F.Supp. 1059, 1064 (D.D.C.1976).

The two criteria mentioned in the *Parker* case, necessity for bringing the action and success with respect to the central issue, appear to this Court to be sensible criteria to apply in any awards determination. Of course, the central issue here was not merely the existence of discrimination, but the violation of a wide range of constitutional and statutory rights. Plaintiffs have certainly been successful with respect to that central issue, and this Court finds that filing of the present suit was clearly necessary in order to halt the violation of federal laws by the various defendants.

Furthermore, the law in this circuit is clear that formal relief is not necessary before an award can be granted under the Awards Act. "[F]or purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief." *Brown v. Culpepper*, 559 F.2d 274, 277 (5th Cir. 1977). In essence, defendants are contending that plaintiffs have not prevailed sufficiently at this point in the litigation to receive a fee award. However, it seems

clear to this Court that if the case were settled immediately, plaintiffs would be entitled to an award. The law provides them with no fewer rights to a fee award merely because they keep the case open to continue the struggle.

Two late cases reinforce the Court's belief that a fee award is appropriate in this situation. In *Nicodemus v. Chrysler Corp.* (N.D.Ohio, filed Oct. 27, 1977), reported in 445 F.Supp. 559, the court granted interim attorney's fees in a Title VII action where a prior finding of liability had been made and prospects of an early termination of the litigation were few. Those two situations also prevail in the case at hand.

In *Buckton v. National Collegiate Athletic Association*, 436 F.Supp. 1258 (D.Mass. 1977) the court discussed the "prevailing party" language of the Awards Act to determine whether or not a party who had won a preliminary injunction was entitled to fees. The court cites the legislative history of the Act in coming to the conclusion that "[t]he clear intent of Congress was to award fees to parties who have effectively succeeded via litigation even though there may not be any formal docket entry signifying such success." 436 F.Supp. at 1264–65.

█ It is clear to the Court that plaintiffs in this case are prevailing parties within the intent of the Awards Act and are entitled to attorney's fees. Nevertheless, they will be required to post a bond to insure recovery of the award and interest should defendants subsequently prevail on appeal. The present award will be applied against the amount of fees ultimately awarded upon conclusion of these proceedings.

### OTHER ISSUES

█ The Fifth Circuit has explicitly held that awards of fees may be made against a state. *Miller v. Carson*, 563 F.2d 741 (5th Cir., filed Nov. 23, 1977); *Rainey v. Jackson State College*, 551 F.2d 672 (5th Cir. 1977). Thus, an award is appropriate against Mr. C. Paul Phelps in his official capacity as Secretary of the Department of Corrections for the State of Louisiana.

A fee award against the Sheriff in his official capacity seems to serve no useful purpose. Statements by counsel during oral argument indicate that funds for administration of the Parish jails must be appropriated by the Police Jury in any event.

█ Defendants have raised the contention that attorney's fees should not be awarded to Mr. R. James Kellogg since he was employed by a non-profit, non-fee-generating organization for part of the period in question. This contention is without merit. All that is required for an award of attorney's fees is the existence of an attorney-client relationship. It is insignificant that the client paid and the attorney charged no fees. *Fairley v. Patterson*, 493 F.2d 598 (5th Cir. 1974); *Miller v. Amusement Enterprises, Inc.*, 426 F.2d 534 (5th Cir. 1970). This is in line with at least three other circuits and dictum in the leading Supreme Court case on attorney's fees. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 246 n.17, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Torres v. Sachs*, 538 F.2d 10 (2d Cir. 1976); *Tillman v. Wheaton-Haven Recreation Association, Inc.*, 517 F.2d 1141 (4th Cir. 1975); *Brandenburger v. Thompson*, 494 F.2d 885 (9th Cir. 1974). However, it is plain that the organization that employed Mr. Kellogg, the American Civil Liberties Union should receive the fees generated by Mr. Kellogg's services up to the date he was no longer employed by them, Mr. Kellogg to receive fees only for services rendered since July 1, 1977 when he left the services of the ACLU.