Cathryn Anita SMITH, Plaintiff,

v.

LA COTE BASQUE, Defendant.

No. 76 Civ. 2253 (RJW).

United States District Court,
S. D. New York.

July 30, 1981.

Clark, Wulf & Levine, New York City,
for plaintiff; Kathleen Peratis, New York
City, of counsel.

Kirschenbaum, Shapiro & Marro, New
York City, for defendant; Joseph P. Marro,
New York City, of counsel.

## OPINION

**ROBERT J. WARD, District Judge.**

Plaintiff Cathryn Anita Smith moves for an order confirming an arbitration award issued in February 1981. The award was issued by a panel of three arbitrators constituted to resolve disputes arising out of the consent decree pursuant to which this action was settled. The arbitrators awarded plaintiff the sum of $2,055. Plaintiff also moves for an award of an attorney's fee in the amount of $22,562.50. Opposing both of plaintiff's applications, defendant La Cote Basque cross-moves for an award of attorneys' fees in its favor on the ground that plaintiff's instant applications are frivolous. For the reasons that follow, the branch of plaintiff's motion seeking to confirm the arbitration award is granted, the branch of her motion for an award of an attorney's fee is adjourned pending an evidentiary hearing, and defendant's cross-motion for attorneys' fees is denied.

### Background

This sex-discrimination action, brought pursuant to Title VII of the Civil Rights Act of 1964 ("the Act"), 42 U.S.C. §§ 2000e–2000e–17, was commenced in May 1976 against defendant La Cote Basque, a number of other New York City restaurants and several labor organizations representing the employees of the defendant restaurants. The action was settled as to defendant La Cote Basque, and a settlement agreement ("the La Cote Basque agreement") in the form of a consent decree was filed on March 7, 1977. In their settlement, however, the parties agreed that defendant La Cote Basque retained the option of substituting for the terms and conditions of the La Cote Basque agreement the terms and conditions of any settlement agreement entered into between plaintiff (and the class she sought to represent) and any of the other defendants. On December 20, 1978, La Cote Basque exercised this option and elected to be bound by a subsequently executed agreement pursuant to which the action was settled as to Lutece ("the Lutece agreement"), another of the defendant restaurants.

By stipulation approved by the Court and filed on February 13, 1979, plaintiff and defendant La Cote Basque agreed that La Cote Basque had validly exercised its option. Prior to the execution of this stipulation, plaintiff had moved for an order directing that La Cote Basque participate in the arbitration of certain disputes between it and plaintiff that had arisen under the settlement agreement, and in the stipulation the parties agreed to submit these disputes to arbitration. Because of La Cote Basque's election, it was agreed that this arbitration would be conducted under the arbitration procedures of the Lutece agreement rather than those of the La Cote Basque agreement. Since the disputes had arisen before La Cote Basque elected to substitute the Lutece agreement, however, the Court directed that the arbitrators apply the terms of the La Cote Basque agreement to determine the substantive rights of plaintiff and La Cote Basque.

### Arbitration Award

Defendant contends that the Court does not have jurisdiction to confirm the arbitration award. This contention is without merit. The Court has retained jurisdiction over this matter throughout. The Lutece agreement, at paragraph 17, provides that "[t]he Court will retain jurisdiction of this action pending disposition of all matters contained in this Decree and for the purpose of issuing any additional order required to effectuate this Decree." Moreover, in the stipulation pursuant to which the arbitration was conducted, plaintiff and defendant La Cote Basque agreed that "the Court has continuing jurisdiction to enforce the agreement of the parties." A court's jurisdiction to issue orders to effectuate and enforce the settlement of an action before it includes the jurisdiction to enter an order confirming an award resulting from an arbitration conducted pursuant to the settlement.

Both the Lutece and La Cote Basque agreements (at paragraphs 16(h) and 14(i), respectively) provide that an arbitration

award will be enforceable "under New York Law [sic] as if it were a labor arbitration award." In the Court's view, this provision does not require that judgment on an arbitration award be entered only by a New York state court. Rather, it evidences an intention only that the award be enforceable in accordance with New York law. As the court of appeals observed in *I/S Stavborg v. National Metal Converters, Inc.*, 500 F.2d 424, 427 (2d Cir. 1974), given that the underlying dispute was governed by federal law, "it seems doubtful . . . that either party was particularly concerned that an award might be enforced in federal court." *See also T & R Enterprises, Inc. v. Continental Grain Co.*, 613 F.2d 1272, 1279 (5th Cir. 1980) (once federal court has jurisdiction, power exists to enter judgment on arbitration award arising out of original action).

■ The Court also finds no merit to defendant's further contention that the award be modified to reverse certain of the arbitrators' findings as to La Cote Basque's liability to plaintiff. There is nothing in the record to suggest that the arbitrators exceeded their authority or otherwise acted improperly in reaching the results they did. Accordingly, plaintiff's application to confirm the award must be granted.

### Attorney's Fee

Turning to the more difficult question of plaintiff's application for an award of a $22,562.50 attorney's fee, the Court notes first that this application was presented by plaintiff to the arbitrators at the close of the arbitration proceedings. The arbitration panel awarded plaintiff's counsel the nominal fee of $250 authorized in paragraph 16(e) of the Lutece agreement, after determining that it had no other authority under either the Lutece agreement or the La Cote Basque agreement to award a more substantial attorney's fee to plaintiff. The arbitrators did conclude, however, that plaintiff's counsel deserved "a substantial and reasonable fee for her highly skillful and professional work."

To determine whether it can award an attorney's fee to the plaintiff in this case pursuant to Title VII the Court must address itself to two separate inquiries. The Court first must decide whether, as a general matter, Title VII authorizes an award of attorneys' fees in actions brought to enforce settlements of employment discrimination actions. Second, the Court must determine whether in this particular action, even if Title VII would otherwise empower it to award an attorney's fee to plaintiff as the prevailing party, the applicable settlement agreement or agreements here preclude such an award.

The Court has reviewed the authority cited by plaintiff in support of her contention that attorneys' fees are commonly awarded in proceedings brought to enforce consent decrees in civil rights actions. None of the cases cited addresses the precise question raised here. In *Class v. Norton*, 505 F.2d 123, 126–27 (2d Cir. 1974), for example, the court of appeals affirmed an award of attorneys' fees against a state officer, sued in his official capacity, for the willful and unreasonable failure to comply with certain orders issued in connection with the district court's decision in the underlying dispute. Similarly, the court in *Vecchione v. Wohlgemuth*, 481 F.Supp. 776, 783 (E.D.Pa.1979), merely stated in dictum that, for the part of the fee application before it where fees were sought for services performed by counsel after the consent decree had been entered, it would award fees for those services "on the theory that defendants' bad faith in complying" with the decree permitted such an award. The closest plaintiff comes to the question at issue here is a footnote appended to the Fifth Circuit's decision in *Cook v. Ochsner Foundation Hospital*, 559 F.2d 270, 273 n.6 (1977) (which affirmed a decision to award attorneys' fees for the willful disobedience of a court order), where the court notes in dictum that an award of attorneys' fees incident to the enforcement of a consent decree in a civil rights action might be permissible under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988.

■ Nevertheless, even without the support of authority directly on point, the Court is of the view that the award of a reasonable attorney's fee may be appropriate in this case. Courts have consistently given a liberal construction to the attorneys' fees provision of Title VII. Indeed, it is now settled that a prevailing plaintiff in a Title VII action "ordinarily is to be awarded attorney's fees in all but special circumstances." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978). *See also Milwe v. Cavuoto*, 653 F.2d 80, 82 (2d Cir. 1981). Moreover, as the Supreme Court recently held in *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 423 (1980), section 706(k) of the Act authorizes an award of attorneys' fees to a prevailing Title VII plaintiff for work done in administrative proceedings preceding the filing of a Title VII action. Attorneys' fees may also be awarded pursuant to section 706(k) to a plaintiff who prevails by settlement through a consent judgment, as in this case, or even without formally obtaining court-ordered relief. *Chicano Police Officer's Association v. Stover*, 624 F.2d 127, 131 (10th Cir. 1980). *See also Maher v. Gagne*, 448 U.S. 122, 129–30, 100 S.Ct. 2570, 2574–75, 65 L.Ed.2d 653 (1980) (fact that plaintiff prevailed by settlement in action under 42 U.S.C. § 1983 does not preclude award of attorneys' fees pursuant to 42 U.S.C. § 1988).

Although the Court in *New York Gaslight Club, Inc. v. Carey, supra*, necessarily concentrated on the meaning of the word "proceeding" in section 706(k) as it relates to administrative proceedings instituted prior to the commencement of a Title VII action, in its decision the Court did not limit the Title VII proceedings for which attorneys' fees could be awarded to those administrative proceedings required by the Act as conditions precedent to a federal lawsuit. At one point in the *New York Gaslight Club* opinion the Court observed that "throughout Title VII the word 'proceeding,' or its plural form, is used to refer to all different types of proceedings in which the statute is enforced, state and federal, administrative and judicial." 447 U.S. at 62–63, 100 S.Ct. at 2030. Indeed, as the Court further noted, *id.* at 63 n.3, 100 S.Ct. at 2030 n.3, section 706(i) authorizes the Equal Employment Opportunity Commission "to commence proceedings to compel compliance" with certain court orders issued in Title VII actions. Plainly, the "proceedings" contemplated by section 706(i) are not limited to proceedings instituted prior to a final judgment. Thus, it cannot be said that Congress intended to restrict the proceedings for which attorneys' fees may be awarded to those occurring before federal suit is commenced.

In the Court's view, an interpretation of section 706(k) that precluded the awarding of attorneys' fees for proceedings brought to enforce a consent decree entered pursuant to the settlement of a Title VII action would not comport with the congressional policy underlying the authorization given to the federal courts to award such fees. Congress "cast the Title VII plaintiff in the role of 'a private attorney general' vindicating a policy 'of the highest priority.'" *New York Gaslight Club, Inc. v. Carey, supra*, 447 U.S. at 63, 100 S.Ct. at 2030 (quoting *Christiansburg Garment Co. v. EEOC, supra*, 434 U.S. at 416, 98 S.Ct. at 698). Recognizing the importance of private enforcement of civil rights legislation, courts have consistently held that the statutory provisions authorizing the awarding of attorneys' fees as part of this private enforcement scheme should be broadly interpreted. *E. g., Parker v. Califano*, 561 F.2d 320, 330 (D.C.Cir.1977); *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 716 (5th Cir. 1974).

■ Although the Court here concludes that section 706(k) authorizes an award of attorneys' fees in proceedings brought to enforce settlement decrees, it does *not* necessarily follow that attorneys' fees can be awarded for work performed in all types of enforcement proceedings, including arbitration. Indeed, the argument that attorneys' fees can be awarded only for judicial post-settlement enforcement proceedings is not without some persuasive force. After all, arbitration is a matter of contract, *Roch-*

dale Village, Inc. v. Public Service Employees Local 80, 605 F.2d 1290, 1294 (2d Cir. 1979), and it would not be entirely unreasonable or unfair for a court to conclude that, as a matter of law, in entering into a settlement agreement containing an arbitration provision the parties, in exchange for an efficient means of resolving disputes arising under the agreement, gave up the opportunity a party prevailing in a judicial enforcement proceeding would have to obtain an award of attorneys' fees. Such a rule, however, could have unfortunate results, for surely it would discourage Title VII litigants, especially plaintiffs, from entering into settlement agreements that provided for arbitration. In the Court's view, this would run counter to the federal courts' traditional policy of favoring arbitration as a means of avoiding costly and time-consuming litigation. The Court therefore holds that attorneys' fees may be awarded under section 706(k) to a party who prevails in an arbitration proceeding brought to enforce a settlement decree in a Title VII action.

█ In reaching the result it does, however, the Court does not decide that the parties to a Title VII settlement cannot bargain away the right to seek an award of attorneys' fees for work done in enforcement proceedings. Indeed, as the Court understands it, it is defendant's argument here that plaintiff did just that. As noted earlier in this decision, the Lutece agreement makes specific provision for a liquidated attorney's fee award of $250 for work in enforcing the settlement through arbitration, while the La Cote Basque agreement makes no mention of the matter. Defendant maintains that because the Lutece agreement governed the arbitration procedures here its attorney's fee provision applies and limits plaintiff's award to the $250 the arbitrators gave her. Alternatively, defendant argues that, even if the Court finds that the La Cote Basque agreement applies to the question of attorneys' fees, the agreement's silence on the subject must be taken to mean that the parties agreed that no such fees could be recovered.

At this stage, the Court is not persuaded by either of defendant's arguments. The question of attorneys' fees is substantive and not procedural. Thus, on the face of it, defendant's argument that the Lutece agreement applies appears to be without merit. The Court also entertains considerable doubt that the parties' failure to mention attorneys' fees in the La Cote Basque agreement evidences an agreement that such fees could not be awarded for arbitration proceedings. Nevertheless, the Court will afford defendant the opportunity at an evidentiary hearing to persuade the Court either (1) that the Lutece agreement applies and plaintiff's attorney's fee award is limited to $250 or (2) that in entering into the La Cote Basque agreement the parties agreed that no future application for an award of attorneys' fees would be made. See Chicano Police Officer's Association v. Stover, supra, 624 F.2d at 132. In its attempt to do so defendant must of course remain mindful of the parole evidence rule. See generally 3 Corbin on Contracts § 583 (rev. ed. 1960).

At this evidentiary hearing the Court also will inquire into the nature and reasonableness of the amount of the attorney's fee sought by plaintiff. See City of Detroit v. Grinnell Corp., 495 F.2d 448, 468 (2d Cir. 1974). Such an inquiry is especially important in an application for attorneys' fees where, as here, the work for which a fee is sought was not done incident to a proceeding before the Court ruling on the fee application. The Court's decision to permit an application for attorneys' fees for work performed in a Title VII enforcement proceeding by arbitration does not afford a carte blanche, risk-free option to an aggrieved party to assert any and all possible claims in an arbitration proceeding. It is therefore essential that the Court, in considering the attorney's fee application, have before it a record on which it can carefully scrutinize the arbitration proceedings to ensure that, if an attorney's fee is awarded, it is awarded only for time reasonably spent in prosecuting sex-discrimination claims that were reasonably asserted and arose out of the settlement decree.

As an alternative basis for an award of an attorney's fee, plaintiff may also seek to demonstrate at the evidentiary hearing that defendant willfully failed to comply with the consent decree. *See, e. g., Class v. Norton, supra,* 505 F.2d at 126–27. Needless to say, however, the Court will not conduct a de novo inquiry into each of the allegations of noncompliance considered by the arbitration panel.

### Conclusion

Accordingly, the portion of plaintiff's motion to confirm the arbitration award is granted and the portion of the motion for an award of an attorney's fee is adjourned pending an evidentiary hearing. Inasmuch as the Court finds that plaintiff's motion is not frivolous, defendant's cross-motion is denied. Judgment confirming the award and directing defendant to pay the costs of the arbitration, including the arbitrators' fees, shall be settled on notice. In addition, within fifteen days of the date of this decision the parties are to advise the Court of the time they will need for the evidentiary hearing ordered herein. The Court will then set the matter down for a hearing at a date and time as soon thereafter as its schedule allows.

It is so ordered.