Gary **GILLESPIE**, Plaintiff,

v.

**K.A. BREWER and C.W. McDonald**, Defendants.

Civ. A. No. 80–0188–E(H).

United States District Court,
N.D. West Virginia,
Elkins Division.

Jan. 25, 1985.

Timothy Cogan, Wheeling, W. Va., for plaintiff.

Dana Davis, Asst. Atty. Gen., Office of W. Va. Attorney General, Charleston, W. Va., for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

### I. *Background*

Plaintiff's counsel petitions the Court for an award of attorney's fees pursuant to the Civil Rights Attorney's Fees Act of 1976, 42 U.S.C. § 1988. The action upon which this petition is based alleged Plaintiff's civil rights were violated by members of the West Virginia Department of Public Safety during the November, 1979, security shakedown imposed at the West Virginia State Penitentiary at Moundsville following a mass escape from that institution. By Executive Order No. 3–79 issued on November 20, 1979, then Governor Rockefeller found that the penitentiary imposed "an imminent threat of a disaster of major proportion to the safety and welfare of the inhabitants of this State" and, therefore, declared a state of emergency pursuant to *W.Va.Code*, § 15–5–6. The Order set forth remedial actions to be implemented by the Superintendent of the Department of Public Safety to restore order and security at the prison. The original complaint filed by the Plaintiff *pro se* named as Defendants John D. Rockefeller IV and Harley Mooney who were, at the time of the alleged incident, Governor of the State of West Virginia and Superintendent of the Department of Public Safety (commonly referred to as the state police), respectively. The complaint alleged the Plaintiff was beaten by state police officers and bitten by an attack dog upon the command of a state police officer.[1]

By Order entered December 18, 1980, this Court appointed Petitioner and two other attorneys (who do not join in this fee petition) to represent the Plaintiff and 14 other inmates who had filed civil actions *in forma pauperis* seeking redress for civil rights violations allegedly occurring during the security shakedown. On September 18, 1981, this Court granted Plaintiff's motion for leave of Court to amend the complaint so as to include West Virginia Department of Public Safety personnel Corporal K.A. Brewer and Trooper C.A. McDonald, who were identified by the Plaintiff as the persons who assaulted him. The amended complaint was filed on September 30, 1981. The amended complaint prayed for $50,000 compensatory and $50,000 punitive damages. After the Defendants in the eleven similar cases prevailed at trial, the Plaintiff in this case accepted the Defendants' $200

---

1. The security measures taken at the penitentiary pursuant to the Executive Order have been made the subject of many complaints by inmates. *See Parker v. Rockefeller,* 521 F.Supp. 1013, n. at 1014 (N.D.W.Va.1981).

settlement offer. The settlement agreement included a clause in which all parties agreed to bear their own costs and attorneys' fees.

## II. *Requirements for Award of Attorney's Fees*

■ The Civil Rights Attorney's Fee Act of 1976 provides that in any action under 42 U.S.C. § 1983 the district court "in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the cost." The Fourth Circuit has interpreted this statute as requiring a two-step analysis in determining the appropriateness of such an award. *Bonnes v. Long,* 599 F.2d 1316 (4th Cir.1979) *cert. denied* 455 U.S. 961, 102 S.Ct. 1476, 71 L.Ed.2d 681 (1982). The trial court must first decide whether the litigant seeking the award of attorney's fees is the "prevailing party". 599 F.2d at 1318. If the Court decides the party represented by the fee claimant has prevailed, the Court must then decide, based on its informed discretion, whether a fee should be awarded. 599 F.2d at 1318. To determine the propriety of a fee award in this case, the Court will address the two areas of inquiry prescribed by *Bonnes.*

■ A. *Prevailing Party.* It should be noted at the outset of this discussion that the fact that this litigation was resolved via a settlement agreement as opposed to a trial on the merits does not preclude this Court from finding that the Plaintiff is the prevailing party herein. It is well-established that the term "prevailing party" encompasses a plaintiff who obtains a favorable settlement as opposed to a judgment issued by a court or jury. *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980); *Hanrahan v. Hampton,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980); *Smith v. University of North Carolina,* 632 F.2d 316 (4th Cir. 1980); *Bonnes v. Long,* 599 F.2d at 1318; *Chicano Police Officers' Association v. Stover,* 624 F.2d 127 (10th Cir.1980); *Dawson v. Pastrick,* 600 F.2d 70 (7th Cir.1979); *Nadeau v. Helgemoe,* 581 F.2d 275 (1st Cir.1978); *Brown v. Culpepper,* 559 F.2d 274 (5th Cir.1977); *Parker v. Matthews,* 411 F.Supp. 1059 (D.D.C.1976) *affirmed sub nom Parker v. Califano,* 561 F.2d 320 (D.C.Cir.1977). It is also clear that to be a "prevailing party", one need not win on every issue or obtain all of the relief requested. *Disabled in Action v. Mayor and City Council of Baltimore,* 685 F.2d 881 (4th Cir.1982); *Brown v. Culpepper,* 559 F.2d at 277; *Bly v. McLeod,* 605 F.2d 134 (4th Cir.1979); *Bonnes v. Long,* 599 F.2d at 1318; *Lytle v. Commissioners of Election of Union County,* 541 F.2d 421 (4th Cir.1976); *Nadeau v. Helgemoe,* 581 F.2d at 278–79. This rather broad view of what constitutes a prevailing party is consistent with the fact that, in matters of statutory construction, the "Courts have taken an extremely liberal view on nearly every interpretive question that has arisen thus far under Section 1988." *Gates v. Collier,* 616 F.2d 1268, 1275 (5th Cir. 1980); [2] *see also Mid-Hudson Legal Services, Inc. v. G & U, Inc.,* 578 F.2d 34, 37 (2d Cir.1978).

■ Applying these principles to the case at bar, it appears that the only element of this case that mitigates against a finding that the Plaintiff is the prevailing party is the *amount* of the settlement—$200. This relatively low monetary amount arguably makes the agreement vulnerable to allegations that it is simply a nuisance settlement. This is precisely what the Defendants contend, arguing that the small

---

**2.** The Court in *Gates* attributed the judiciary's expansive application of Section 1988 to the courts' recognition of Congress' "clear signals" that the Act should be liberally interpreted so as to achieve its desired remedial effect. 616 F.2d at 1275. This view is supported in the Act's legislative history. Senate Report No. 94–1011, *reprinted in* [1976] U.S.Code, Cong. & Admin. News, p. 5908, 5910–5911. *See also Smith v. La*

*Cote Basque,* 519 F.Supp. 663, 666 (S.D.N.Y. 1981):

"Recognizing the importance of private enforcement of civil rights legislation, courts have consistently held that the statutory provisions authorizing the awarding of attorneys' fees as part of this private enforcement scheme should be broadly interpreted. [Citations omitted]."

dollar amount of the settlement is evidence that the case was settled only for nuisance value in order to save the cost of further litigation. The Defendants also point to their successes at the trials of the eleven other similar cases as further proof that the agreement was purely a nuisance settlement.[3] The Defendants contend that the courts have refused to award attorneys' fees in cases involving nuisance settlements. However, the four cases cited by the Defendants in support of their proposition[4] have very little, if any persuasive value for the simple reason that none of these cases involved a nuisance settlement. The *Chicano Police Officers' Association* and *Parker* cases do contain language to the effect that attorneys' fees are not properly awarded in nuisance cases.[5] However, inasmuch as these cases had nothing whatsoever to do with nuisance cases, the statements contained therein referred to above, and reproduced in the margin, are perhaps more notable as classic examples of dicta, rather than as authority on the issue of whether attorneys' fees should be awarded in nuisance cases. In any event, the matter under scrutiny is not susceptible to such a simplistic approach. The determination of whether a plaintiff is the prevailing party cannot be made by attempting to affix such an ambiguous label as "nuisance settlement" to the final compromise reached by the litigants. The difficulty in determining the applicability of such a nebulous term as "nuisance settlement" is illustrated by this case. The Plaintiff points to the unsuccessful prosecution of the eleven similar cases and to the Defendants' decision to settle this case as evidence that the settlement of this action was not reached merely for nuisance value. The Defendants, on the other hand, rely upon the same evidence to support their claim that the settlement was in fact a nuisance settlement. Fortunately, the Fourth Circuit has set forth a specific test to be employed in deciding whether the party represented by the fee claimant was the "prevailing party" for purposes of awarding attorney's fees under Section 1988. Therefore, this Court will forsake Defendants' suggested inquiry into whether the parties' agreement is a nuisance settlement in favor of applying the more precise test required in this Circuit.[6]

In *Bonnes* the Fourth Circuit described the manner in which the trial court should decide whether a fee claimant is the "prevailing party" as follows:

3. Of course, Defendants' argument recognizes only the inference that supports the Defendants' position. The fact that the Defendants prevailed in the eleven companion cases yet decided to settle this case equally supports the contrary inference: That by settling *only* this case, the Defendants have admitted that this case was distinguishable in some manner from the other eleven cases and that this tacit recognition of their exposure to liability induced the Defendants to settle this action rather than risk an adverse jury verdict. For the reasons discussed *infra* at p. 222, this Court need not attempt to speculate on the parties' subjective motivations for settling the underlying action in deciding whether or not Plaintiff is the prevailing party.

4. *Chicano Police Officers' Association v. Stover*, 624 F.2d 127 (10th Cir.1980); *Coyote v. Roberts*, 502 F.Supp. 1342 (D.R.I.1980); *Huntley v. Community School Board of Brooklyn*, 579 F.2d 738 (2d Cir.1978); *Parker v. Matthews*, 411 F.Supp. 1059 (D.D.C.1976).

5. "Nuisance settlements, of course, should not give rise to a 'prevailing' plaintiff." *Chicano*

*Police Officers' Association v. Stover*, 624 F.2d at 131.
  "Certainly, attorneys' fees should not be awarded in nuisance settlements." *Parker v. Matthews*, 411 F.Supp. at 1064. *See also Gram v. Bank of Louisiana*, 691 F.2d 728 (5th Cir. 1982). In *Gram* the plaintiff settled her Truth-in-Lending Act action against the Defendant for $150. The Fifth Circuit vacated the trial court's order denying the plaintiff's request for attorney's fees (Section 1640(a)(3) of the Truth-in-Lending Act provides for the award of attorney's fees to a successful plaintiff). In remanding the case to the district court for further proceedings to determine the amount of the attorney's fees to be awarded, the Fifth Circuit expressed the caveat that "nuisance settlements should not give rise to fee awards." 691 F.2d at 730.

6. At the risk of contradicting its statement in the text that it is not necessary to decide whether this action was terminated by a nuisance settlement, the discussion *infra* at p. 223 indicates clearly that the settlement agreement here was not a nuisance settlement.

"This inquiry is properly a pragmatic one of both fact and law that will ordinarily range outside the merits of the basic controversy. Its initial focus might well be on establishing the precise factual/legal condition that the fee claimant has sought to change or effect so as to gain a benefit or be relieved of a burden. With this condition taken as a benchmark, inquiry may then turn to whether as a quite practical matter the outcome, in whatever form it is realized, is one to which the plaintiff fee claimant's efforts contributed in a significant way, and which does involve an actual conferral of benefit or relief from burden when measured against a benchmark condition."

*Bonnes,* 599 F.2d at 1319.[7]

As noted previously, one can "prevail" by obtaining a favorable settlement and the prevailing party need not win on every issue or obtain all the relief requested. *See* cases cited *supra* at p. 221. Having secured from Defendants a $200 payment in satisfaction of his claim against them, the Plaintiff is, at least ostensibly, the "prevailing party" as a "quite practical matter". However, the Defendants have put this payment in contention by arguing that inasmuch as Plaintiff prayed for $100,-000 compensation in his pleadings, he cannot now claim to have prevailed when he obtained only $200, or less than one-half of one percent of the "benchmark" *ad damnum.* For the reasons discussed below, the Court cannot agree with the strict mathematical interpretation given the *Bonnes* test by Defendants and finds that the Plaintiff is the prevailing party.

■ The Court perceives a serious problem with adopting a Plaintiff's *ad damnum* as the exclusive measure of the "benchmark" against which any relief obtained is compared. This was not a suit for $100,000, per se, but an action seeking redress for the deprivation of constitutionally guaranteed rights. The nature or importance of an action does not vary in proportion to the amount of monetary relief requested. The *ad damnum* is only an estimate by the drafter of the complaint of the "relief to which he deems himself entitled." *Rule* 8(a)(3) of the Federal Rules of Civil Procedure. The Plaintiff is not restricted or bound by the relief requested. *See Rule* 54(c); *Steinmetz v. Bradbury Co., Inc.,* 618 F.2d 21 (8th Cir.1980); *U.S. v. Metro Development Corp.,* 61 F.R.D. 83 (N.D.Ga. 1973). The amount of monetary relief requested in a complaint is usually decided without benefit of precise calculations as to the damages the Plaintiff realistically expects to recover. For these reasons, the Court will not adopt what is often a casually arrived at *ad damnum* figure as the "benchmark" in its determination of whether Plaintiff is the prevailing party. Instead, the Court adopts, as its definition of the "precise factual/legal condition" at issue in this case, the alleged deprivation of Plaintiff's constitutional rights by the Defendants. The Court concludes that this, rather than the amount prayed for in compensation for same, is the true matter put in controversy in this action.

With this benchmark properly focused, the Court believes the facts here establish the Plaintiff as the prevailing party. The Plaintiff has, through the instigation and prosecution of this action, brought the Defendants into settlement negotiations which produced results favorable to the Plaintiff. The Court finds significant the fact that, again, as a "quite practical matter" the $200 received by Plaintiff in satisfaction of his action constitutes an "actual conferral of [a] benefit" to the Plaintiff by any reasonable interpretation of that phrase. While $200 is not an insubstantial amount of money even in absolute terms, when it is considered in relation to the Plaintiff's financial position at the time of the settlement, its magnified value to Plaintiff becomes apparent. Plaintiff, due to his incarceration in the state penitentiary, had an extremely limited access to cash and an

---

7. This "benchmark" analysis was reaffirmed by the Fourth Circuit in *DeMier v. Gondles,* 676

F.2d 92 (4th Cir.1982).

equally limited ability to obtain compensable work. To one so situated, the receipt of $200 would certainly loom as a significant sum. That the relief obtained by Plaintiff was less than the amount originally prayed for is unimportant. It is recognized that "compromise is integral to settlement." *Young v. Kenley,* 641 F.2d 192, 195 (4th Cir.1981). Plaintiff's recovery, while it is not the fruits of a complete victory, is significant enough to constitute "a vindication of rights obtained by a settlement." *Smith v. University of North Carolina,* 632 F.2d 316, 346 (4th Cir.1980).

There can be no question that that part of the *Bonnes* test which requires the outcome be "one to which the plaintiff fee claimant's efforts contributed in a significant way" is satisfied in this case. The Defendants certainly would not have paid Plaintiff $200 but for the fact that he filed and prosecuted this action against them. *Cf., Bly v. McLeod,* 605 F.2d 134 (4th Cir. 1979) *cert. denied* 445 U.S. 928, 100 S.Ct. 1315, 63 L.Ed.2d 761 (1980).

For a criticism of this aspect of the *Bonnes* test see Justice Rehnquist's dissent from the Supreme Court's denial of certiorari in the *Bonnes* and *Young* cases. 455 U.S. 961, 102 S.Ct. 1476, 71 L.Ed.2d 681. Justice Rehnquist expressed disfavor with the *Bonnes* test because it "focuses only on the factual question of whether the lawsuit *caused* a change favorable to the plaintiff. . . ." 455 U.S. at 963, 102 S.Ct. at 1477 (emphasis in original). Justice Rehnquist expressed a preference for the First Circuit's test set forth in *Nadeau v. Helgemoe,* 581 F.2d 275 (1st Cir.1978) which requires that the outcome achieved by the action have some basis in *law:*

> "Even if plaintiffs can establish that their suit was causally related to the defendants' actions which improve their condition, this is only half of their battle. The test they must pass is legal as well as factual. If it has been judicially determined that defendants' conduct, however beneficial it may be to plaintiffs' interests, is not required by law, then

> defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense."

581 F.2d at 281. The two tests are compared and contrasted in the district court's second memorandum opinion in *Young v. Kenley,* 485 F.Supp. 365 (E.D.Va.1980) *reversed* 641 F.2d 192 (4th Cir.1981) *cert. denied* 455 U.S. 961, 102 S.Ct. 1476, 71 L.Ed.2d 681 (1982) (The district court's first opinion, reported at 465 F.Supp. 1260 (E.D. Va.1979), was reversed and remanded for reconsideration in light of the then recently adopted *Bonnes* test, 614 F.2d 373 (4th Cir.1979)).

The Plaintiff's recovery in this case meets both Circuits' tests. The debate over which test best effectuates the goals of Section 1988 is only of academic interest here because, as already noted, it is beyond dispute that the results achieved by Plaintiff were causally related to his action *as a matter of fact*—the Defendants would not have voluntarily tendered $200 to Plaintiff but for the fact that he had a pending lawsuit against them. It is also clear that there is a sound *legal* basis for Plaintiff's recovery of monetary damages as compensation for alleged violations of his civil rights. *See* 42 U.S.C. § 1983. In short, there is no question that the settlement payment was made to Plaintiff because of his pending lawsuit; the payment was not a gratuitous action by the Defendants.

█ The Defendants' emphasis on the amount of the settlement in its argument against the award of fees is misplaced. The amount recovered by a plaintiff is not, by itself, determinative of the issue of who is the prevailing party. *See e.g., Wheeler v. Durham City Board of Education,* 88 F.R.D. 27, 32 (M.D.N.C.1980); *Brown v. Boorstin,* 471 F.Supp. 56, 57 (D.D.C.1978). The amount recovered is, however, relevant to the *amount* of the fee award. *Id.* That is, the "results obtained" by the Plaintiff is a specifically designated factor to be designated by the Court in setting the appropriate fee award.[8] The amount of Plaintiff's

---

**8.** This inquiry is covered by Factor No. 8 of the   twelve factors to be considered by the Court in

recovery is relevant in deciding the *degree* of Plaintiff's success (as it relates to the determination of the appropriate fee award); it is not dispositive of the question of whether the Plaintiff prevailed. *Virginia Academy of Clinical Psychologists v. Blue Shield*, 543 F.Supp. 126, 130 (E.D.Va. 1982) ("The minimal relief ultimately required by circumstances in no way detracts from plaintiffs' accomplishments in this litigation. plaintiffs 'substantially prevailed' and will be awarded fees and costs accordingly.")

Applying the pragmatic test required by the Fourth Circuit, the Court cannot escape the conclusion that Plaintiff is the prevailing party. As noted above, the only factor militating against such a conclusion is the amount of the recovery. As has been discussed, this fact is relevant in determining the amount of the attorney fee award; not whether an award of fees should be made to the prevailing party. The Plaintiff's action has been successful in not only recovering a monetary award for himself, but also in establishing by the prosecution, and ultimate settlement of this action, that a citizen's constitutional rights cannot be violated without serious repercussions in the form of litigation and liability for monetary damages. In this manner, Plaintiff's action has served to vindicate his rights and should serve as a deterrant to prevent others from taking lightly the constitutional rights of a prisoner. In this very real sense, the settlement achieved by Plaintiff establishes Plaintiff as the prevailing party in this case.

■ B. *Discretion.* "The discretion of the district court in deciding whether to award attorney's fees to a prevailing party is narrowly limited." *Bonnes v. Long*, 599 F.2d at 1318. Absent "special circumstanc-

es" which would render an award of fees unjust, a prevailing party "should ordinarily recover an attorney's fee...." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 401, 88 S.Ct. 964, 965, 19 L.Ed.2d 1263 (1968). In exercising the limited discretion afforded it in this matter, the Court perceives no special circumstances which would render unjust an award of attorney's fees in this case. Quite to the contrary, an important reason for awarding fees in this case is that doing so is supported by "the basic rationale of Section 1988: that enforcement of civil rights legislation can best be achieved by encouraging the public to act as private attorneys general." *Bonnes v. Long*, 599 F.2d at 1318. In his textural dissent from the denial of certiorari to the Fourth Circuit's *Bonnes* and *Young* cases [9] Justice Rehnquist traced the legislative purpose behind Section 1988:

"When it passed the Act, Congress was aware that '[t]he effective enforcement of Federal civil rights statutes depends largely on the efforts of private citizens,' H.R.Rep. No. 94–1558, p. 1 (1976), and that 'a vast majority of the victims of civil rights violations cannot afford legal counsel [and] are unable to present their cases to the courts.' *Ibid.* Accordingly, the Act was passed to encourage the 'vigorous enforcement of modern civil rights legislation,' S.Rep. No. 94–1011, p. 4 (1976), by ' "private attorney[s] general" advancing the rights of the public at large, and not merely some narrow parochial interest.' 122 Cong.Rec. 35122 (1976) (remarks of Rep. Drinan, sponsor)."

455 U.S. at 967, 102 S.Ct. at 1479. *See also Gates v. Collier*, 616 F.2d 1268, 1273–75 (5th Cir.1980).[10]

setting the fee award. *See Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir.1978) *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978). This factor is discussed *infra* at p. 229.

**9.** *See* p. 224, supra.

**10.** In discussing the legislative history of Section 1988, the court in *Mid-Hudson Legal Servic-*

*es, Inc. v. G & U, Inc.*, 578 F.2d 34, 37 (2d Cir.1978) noted:

"The remedy of attorneys' fees has always been recognized as particularly appropriate in the civil rights area, and civil rights and attorneys' fees have always been closely interwoven. In the civil rights area, Congress has instructed the courts to use the broadest and most effective remedies available to achieve

The above quoted portion of the legislative history of Section 1988 indicates that suits such as this one are an integral part of the enforcement scheme of the civil rights laws. Plaintiff, by bringing this action, and Petitioner by providing Plaintiff with legal representation, have served this Congressional purpose of Section 1988. Petitioner is entitled to compensation for his services performed while actively pursuing the enforcement of Plaintiff's civil rights.

### III. *Waiver*

■ The Defendants contend that Petitioner is barred from seeking an award of attorney's fees because the settlement agreement specifically provided that each party was to bear his own costs and attorney's fees. Petitioner concedes, as he must, that the settlement agreement does contain such a clause but argues that prior to executing the agreement he had notified defense counsel that he would not consider himself bound by the clause waiving his right to petition for attorney's fees. Petitioner considered the inclusion of such a clause to be unethical. The correspondence between counsel discloses that Petitioner, as counsel for Plaintiff, informed defense counsel that he felt the clause in the agreement covering fees should not be included because it was not discussed by negotiation and could lead to a conflict of interest; defense counsel felt equally strongly that the clause should be included.[11] This presents to the Court the issue of whether a clause waiving a statutorily granted right to petition for attorney's fees is enforceable. For the reasons discussed below, the Court concludes that such a clause violates public policy and is unenforceable.

In a prior opinion this Court addressed this issue and ruled as follows:

"The defendants stress that:

'The plaintiff has clearly waived any potential award of attorney fees in the two federal lawsuits by expressly releasing the defendants "... from any and all ... costs, [and] expenses ..." in the

the goals of our civil rights laws [citations omitted]."

Release of All Claims signed by him on April 7, 1981. [Defendants' Memorandum at 3, see nt. 2, *supra* ].'

In the hearing held on this matter Defendants testified that Plaintiff had in fact negotiated away his right to recover an attorney's fee. Defendants urge that this is a 'special circumstance' justifying the denial of a claim for an attorney's fee.

It is clear that the congressional purpose in providing attorney fees in civil rights cases was to eliminate financial barriers to the vindication of constitutional rights and to stimulate voluntary compliance with the law. S.Rep. No. 1011, 94th Cong., 2d Sess., *reprinted in* [1976] U.S.Code Cong. & Ad.News, p. 5908; H.R.Rep. No. 1558, 94th Cong., 2d Sess. (1976). *Seattle School Dist. No. 1 v. State of Washington*, 633 F.2d 1338, 1348 (9th Cir.1980). This Court must conclude that any negotiation concerning attorney fees during the settlement of the merits is against public policy. Such considerations are not interests which are meant to be resolved as a part of the merits of the action. Neither the client nor the attorney should have to weigh such considerations in determining whether an action should be settled. 'The possibility of an adverse effect upon the exercise of free judgment by a lawyer on behalf of his client during litigation generally makes it undesirable for a lawyer ... to become financially interested in the outcome of the litigation....' E.C. 5–7, A.B.A., *Code of Professional Responsibility*. Because a waiver of attorney fees is contrary to the congressional purpose favoring the award thereof and has the very real potential of running afoul of pertinent ethical considerations, this Court must decline to consider the proposed language of the settlement agreement as a special circumstance warranting against the award of an attorney's fee in this action."

**11.** *See* letters dated February 18, 1982, and February 22, 1982.

*McGraw v. McCoy,* Civil Action No. 79–0004 and 80–0207, Memorandum Opinion and Order at pp. 4–5, entered July 25, 1982.

The danger of allowing defense counsel to infuse into the settlement negotiations a demand for a fee waiver by Plaintiff's counsel is easily illustrated. A Plaintiff, of course, has no interest in the amount of attorney's fees his counsel will receive; indeed the Plaintiff has no interest in whether his counsel receives *any* fee. The practicalities of the economics of practicing law, however, do not permit a Plaintiff's counsel to ignore the importance of the fee recovery. Payment for services rendered is necessary to the continued existence of any law practice. Plaintiff's disinterest in a fee recovery stands in sharp contrast to the attorney's understandable desire to be paid for his services. When confronted with a favorable settlement offer which is accompanied by a demand that counsel waive his right to petition for statutorily provided attorney's fees, counsel is placed in an untenable position. By rejecting the offer he is placing his desire to recover a fee over his client's interest in obtaining the favorable settlement. If counsel accepts the offer he is unfairly forced to forego compensation for his legal services. This dilemma was recognized by the Committee on Professional and Judicial Ethics of the Association of the Bar of New York City in its Opinion No. 80–94, rendered September 18, 1981:

> "Frequently, plaintiffs' counsel in civil rights litigation are employed by a public interest organization which does not accept fees from the client as a matter of policy and in any event, plaintiffs in such cases often have no resources to pay a fee. In such cases, waiver of the attorneys' fees will not affect only the lawyers and their organizations, who depend entirely on the statute for their fee; the client who is not obligated or is unable to pay fees, has no stake in the statutory fee and is hence not concerned with its waiver. Yet, plaintiff's counsel owes undivided loyalty to the client and is obligated to exercise his judgment in evaluating the settlement free from the influence of his or his organization's interest in a fee. DR–5–101(A). Hence, it would seem that plaintiff's counsel confronted by such a demand must ignore his or his organization's interest in a fee and recommend waiver of the fee if the substantive terms of the settlement are desirable for the plaintiff. Defense counsel thus are in a uniquely favorable position when they condition settlement on the waiver of the statutory fee: They make a demand for a benefit which the plaintiff's lawyer cannot resist as a matter of ethics and which the plaintiff will not resist due to lack of interest [footnotes omitted]."

The Third Circuit has also cautioned against the simultaneous negotiation of the substantive settlement and attorney's fees:

> "The respective interests of lawyer and client may also vary, depending on whether the fee comes from a recovered fund or directly from the defendant in satisfaction of a separate obligation.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> When the statute provides that a fee is to be paid as a separate item, the conflict between client and attorney may not be as apparent, particularly in the event of settlement. It is often present nonetheless."

*Prandini v. National Tea Co.,* 557 F.2d 1015, 1020 (3rd Cir.1977). The court suggested "[a] reasonable solution … is for trial courts to insist upon settlement of the damage aspect of the case separately from the award of statutorily authorized attorneys' fees." 557 F.2d at 1021. *See also, Mendoza v. U.S.,* 623 F.2d 1338, 1352–1353 (9th Cir.1980) *cert. denied* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981).

Because the demand by defense counsel that Petitioner waive his right to petition for an award of attorney's fees served to create a conflict of interest between Petitioner and Plaintiff, as is inevitable whenever such a demand for a fee waiver is made, the Court concludes that such a demand cannot be enforced as a matter of public policy. Accordingly, the Court finds defense counsel's demand for a

fee waiver by Petitioner, and the language in the final settlement reflecting that each party is to bear his own costs and attorney's fees, to be without force and effect.

## IV. *Determination of Amount of Fees*

The Fourth Circuit has set forth twelve specific criteria to be considered in any case involving an award of attorney's fees. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir.1978) *cert. denied* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978). In applying these factors, the Fourth Circuit has indicated that the trial courts should "begin with a figure based on the number of hours reasonably expended multiplied by a reasonable hourly rate and then explain any adjustment of these figures either up or down because of the other *Johnson* [*v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974)] factors listed in *Barber.*" *Anderson v. Morris*, 658 F.2d 246, 249 (4th Cir.1981). Following the guidelines established by *Barber* and *Anderson*, the Court makes the following findings concerning a reasonable fee award in this case.

1. TIME AND LABOR EXPENDED. Petitioner has submitted a detailed itemization of the time he spent representing the Plaintiff in this action. After carefully scrutinizing Petitioner's original itemization and the supplemental itemization setting forth an additional 8.37 hours spent in conferences and research, the Court finds each of these items to be reasonable and necessary to counsel's preparation and representation of his client in this cause. Accordingly, the Court adopts by reference Petitioner's itemization of the time spent on this case and finds the time reasonably expended by the Petitioner in this action to be 69 hours.

2. NOVELTY AND DIFFICULTY OF THE QUESTIONS RAISED. This case presented a factual question of whether the alleged constitutional deprivations occurred. No novel or difficult legal issues were raised by this litigation. The Court has treated this factor neutrally in determining the fee award.

3. SKILL REQUIRED TO PROPERLY PERFORM THE LEGAL SERVICES. The level of skill required to perform the legal services rendered in this action is the same as that required for effective representation in the average personal injury civil action. However, Petitioner's task was made more difficult in this matter by the number of plaintiffs claiming to have been injured during the security shakedown and the practical problems arising from the fact that Petitioner's client was incarcerated for the duration of this litigation. Despite these additional difficulties presented by the case, the Court does not deem it appropriate to increase the fee award to compensate for same.

4. ATTORNEY'S OPPORTUNITY COSTS IN PRESSING THE INSTANT LITIGATION. While this case did not require such a time-consuming and exhaustive pretrial preparation that would preclude the Petitioner from accepting other employment during the pendency of this action, the substantial time and energy expended on behalf of the Plaintiff herein certainly barred the Petitioner from accepting other remunerative employment. Petitioner's itemization of time expended in this case reveals that most of counsel's time was spent, as would be expected in a case of this nature, in discovery and research which could be scheduled at counsel's convenience within the pretrial time-frame established by the Court. Because the "opportunity costs" of this action are properly characterized as being the same as in any other civil litigation, the Court has not increased or decreased the fee award under this factor.

5. CUSTOMARY FEE FOR LIKE WORK. At the time this case was litigated, compensation in this area ranged from $35 per hour for out-of-court services to in excess of $75 per hour for in-court services. The Petitioner had been a practicing attorney for approximately three years when the Court appointed him to represent Plaintiff in this action. The Court finds that the market rate for the type of legal services rendered by Petitioner, considering Peti-

tioner's experience was $40 per hour at the time the services were rendered by Petitioner.

Multiplying the above mentioned hourly rate ($40) by the number of hours reasonably expended in this case by Petitioner (69) the Court finds the lodestar figure for Petitioner's fee award to be $2,760.

Petitioner suggests that the lodestar amount be increased by a "multiplier" of two, given the complexity and novelty of the legal and factual issues in this case. Although such a multiplier is used in the Second and Third Circuits,[12] the *Barber* and *Anderson* cases, controlling here, do not provide for the use of a multiplier. In this Circuit, all adjustments to the lodestar figure are to be made pursuant to the enumerated twelve factors. *See Virginia Academy of Clinical Psychologists v. Blue Shield,* 543 F.Supp. 126, 151 (E.D.Va.1982).

6. WHETHER FEE IS FIXED OR CONTINGENT. The Petitioner accepted the appointment in this case knowing that he would not be compensated unless his client prevailed. Inasmuch as "courts have generally recognized that a contingent fee lawyer may have the right to expect a fee greater than if his fee were guaranteed"[13] and inasmuch as the prospects of prevailing in this case were far from certain, the Court will increase the lodestar amount by 15% to allow for the fact that Petitioner was working on this case, as a Court-appointed attorney, without any guarantee of receiving payment for his services.

7. TIME LIMITATIONS IMPOSED BY THE CLIENT OR THE CIRCUMSTANCES. The Court has been made aware of no time limitations imposed in this case, other than those inherent in the scheduling of any civil matter. The Court makes no allowance in the lodestar figure pursuant to this factor.

8. AMOUNT INVOLVED AND THE RESULTS OBTAINED. The Court will not use this factor "as a basis on which to rehash the issue of who prevailed in this case." *Virginia Academy of Clinical Psychologists v. Blue Shield,* 543 F.Supp. at 126. Considering this factor as relevant only to the *degree* of success, the Court finds that a substantial reduction in the lodestar amount is required to properly reflect the small monetary settlement and the fact that the case was settled without obtaining any type of permanent injunctive relief. The Court believes a reduction of 35% properly accounts for this factor and notes that an even greater reduction would be in order had this litigation not served to vindicate important constitutional rights.

9. EXPERIENCE, REPUTATION AND ABILITY OF ATTORNEY. The Court is satisfied with the manner in which Petitioner performed his duty as Court-appointed counsel in this case. Petitioner performed all his obligations in a timely and competent fashion which reflects favorably on his ability. Petitioner's reputation is unblemished; the Court would not have appointed Petitioner had it been otherwise. Although Petitioner rates high under this factor, because the Court has already taken these matters into consideration in setting the hourly rate of $40, the Court will not increase or decrease the lodestar figure to reflect these admirable characteristics of Petitioner.

10. UNDESIRABILITY OF CASE. Along a continuum of cases ranging from those that are very readily accepted by counsel to those that could be termed "undesirable", this case would most certainly be very near the end of the spectrum labeled "undesirable". Representing a prisoner in a Section 1983 action against law enforcement officials is a difficult and unpleasant task due to the nature of the issues involved, the limited access provided to the client/prisoner and the unlikelihood

---

12. *See e.g., Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3rd Cir.1973); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir.1974).

13. *Virginia Academy of Clinical Psychologists v. Blue Shield,* 543 F.Supp. at 148.

**230**

of ultimate success. The Court deems it appropriate to reward Petitioner for accepting the appointment in this case as the Court is aware of the hardships often created by such an appointment. Accordingly, the Court increases the lodestar figure by 20% to compensate Petitioner for accepting the appointment and, hopefully, to encourage other counsel to accept such cases when asked to do so by the Court or a party seeking redress.

11. NATURE AND LENGTH OF THE PROFESSIONAL RELATIONSHIP WITH THE CLIENT. The tenure of the attorney-client relationship between Plaintiff and Petitioner is limited to the duration of this action. The Court has made no change in the lodestar figure under this factor.

12. AWARDS IN SIMILAR CASES. The Court has awarded counsel between $30 and $60 per hour for out-of-court services rendered in civil actions. The award of $40 per hour in this case approximates the median hourly rate set by the Court in other cases.

For the reasons discussed in addressing the above twelve criteria, the Court hereby awards Petitioner a fee of $2,760 to be assessed against the West Virginia Department of Public Safety. It is further ORDERED that the aforementioned amount shall be tendered to Petitioner within fifteen days of the date this Order is entered.[14]

---

14. Although the Petitioner is entitled to be compensated for the time Petitioner spent in establishing his right to recover attorney's fees, *Bond v. Stanton*, 630 F.2d 1231 (7th Cir.1980) *cert. denied sub nom Blinzinger v. Bond*, 454 U.S. 1063, 102 S.Ct. 614, 70 L.Ed.2d 601 (1981), Petitioner has not requested compensation for the time he spent establishing his right to recover a fee and, accordingly, no compensation for this time has been awarded.